Keith PATTON, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A02–0211–PC–975.

Court of Appeals of Indiana.

June 10, 2003.

Daniel M. Grove, Special Assistant to the Public Defender of Indiana, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant-petitioner Keith Patton appeals the denial of his petition for post-conviction relief. We affirm in part, reverse in part, and remand.

### Issues

Patton raises six issues for review, which we consolidate and restate as follows:

I.    Whether our supreme court's reversal of his murder conviction invalidated his guilty plea;

II.    Whether several of his convictions violate double jeopardy;

III. Whether his guilty plea to attempted murder was knowing, voluntary, and intelligent; and

IV. Whether he may challenge trial counsel's statements during voir dire regarding his guilty plea.

## Facts and Procedural History

Shortly after midnight on October 22, 1983, after consuming eighty ounces of beer between them, seventeen-year-olds Patton and Leroy Johnson approached a parked car in Washington Park in Indianapolis. Michael Pack and Dietra Maxey were sitting in the driver's and passenger's seats, and Maxey's four-year-old daughter was sleeping in the back seat. Patton shot out the driver's-side window with a sawed-off twelve-gauge shotgun, seriously injuring Maxey. When Pack attempted to start the car, Johnson shot the passenger's-side rear tire with his sawed-off twenty-gauge shotgun. Patton said, "Don't—give it up. Don't try it[,]" then fired his shotgun a second time, killing Pack. Trial Tr. at 928. Patton ordered Maxey out of the car and led her away from the scene, leaving her daughter behind. Both Patton and Johnson had sexual, oral, and anal intercourse with Maxey, and Patton inserted his shotgun into Maxey's vagina.[1]

On October 28, 1983, the State charged Patton with murder[2] and with two counts of Class A felony rape,[3] one of which was later dismissed. On November 28, 1983, the State filed an information for death sentence. On January 24, 1984, under a separate cause number,[4] the State charged Patton with attempted murder,[5] Class B felony criminal confinement,[6] three counts of Class A felony criminal deviate conduct,[7] and dealing in a sawed-off shotgun.[8] These causes were later consolidated under cause number CR83–232D.

On June 1, 1984, Patton signed a document wherein he agreed to plead guilty as charged, acknowledged that the State would continue to seek the death penalty, and agreed to transfer the consolidated causes from Judge Patricia Gifford to Judge Thomas E. Alsip for guilty plea proceedings. That same day, Judge Gifford appointed Judge Alsip as a special judge to hear the cause. In July 1984, Judge Alsip accepted Patton's guilty plea and sentenced him to death on the murder conviction, thirty years on the rape conviction, and 132 years on the remaining convictions.[9]

---

1. Patton describes the encounter as follows: "Two black males approached the car and fired shotguns into it. The driver was killed. The woman was taken from the car and sexually assaulted." Appellant's Br. at 4. Given Patton's admitted involvement in these deadly and disturbing events, this grossly inadequate statement of the facts is not well taken. We remind Patton's counsel that he must state the facts "in accordance with the standard of review appropriate to the judgment or order being appealed." Ind. Appellate Rule 46(A)(6)(b).

2. Ind.Code § 35–42–1–1. For ease of reference, all statutory citations refer to the current codification of the relevant statutes.

3. Ind.Code § 35–42–4–1.

4. The State initially filed these charges in juvenile court and successfully sought waiver of jurisdiction to adult court.

5. Ind.Code §§ 35–42–1–1 (murder), 35–41–5–1 (attempt).

6. Ind.Code § 35–42–3–3.

7. Ind.Code § 35–42–4–2.

8. Ind.Code § 35–47–5–4.1.

9. Judge Alsip sentenced Patton to consecutive terms of thirty years for attempted murder, ten years for criminal confinement, thirty years for each count of criminal deviate conduct, and two years for dealing in a sawed-off shotgun.

Patton appealed only his murder and rape convictions. In December 1987, our supreme court determined that Patton had protested his innocence to the murder charge at the sentencing hearing and reversed and remanded "for trial on that charge and sentencing on the rape charge." *Patton v. State*, 517 N.E.2d 374, 376 (Ind.1987) ("*Patton I*").[10]

Upon remand, the cause was venued to Judge Gifford. Patton unsuccessfully challenged Judge Gifford's jurisdiction. *See State ex rel. Patton v. Superior Court of Marion County*, 547 N.E.2d 255 (Ind. 1989) (denying Patton's writ for mandate and prohibition) ("*Patton II*"). In March 1990, a jury convicted Patton of murder and recommended against the death penalty. Judge Gifford sentenced Patton to sixty years for murder, to be served concurrently with his thirty-year rape sentence and consecutive to the 132–year sentence on his other convictions. Patton then appealed his murder conviction, which our supreme court affirmed. *See Patton v. State*, 588 N.E.2d 494 (Ind.1992) ("*Patton III*").

In 1996, Patton filed pro se a petition for post-conviction relief, which was subsequently amended by counsel. On December 19, 2001, the post-conviction court held a hearing on Patton's petition. On August 22, 2002, the post-conviction court denied Patton's petition. Patton now appeals.

### Discussion and Decision

■ At the outset, we note the appropriate standard of review:

Post-conviction procedures do not afford the petitioner with a super-appeal.

Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. Petitioners bear the burden of establishing their grounds for relief by a preponderance of the evidence. If an issue was known and available but not raised on appeal, it is waived. If it was raised on appeal but decided adversely, it is res judicata.

When one appeals the negative judgment of a post-conviction court, the standard is even more rigorous. Petitioners must show that the evidence as a whole, "leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court."

*Williams v. State*, 706 N.E.2d 149, 153–54 (Ind.1999) (citations omitted), *cert. denied*, 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000).

### I. Invalidation of Guilty Plea

■ By signing the guilty plea document, Patton indicated that he understood "that the State [was] a party to this document only as it relates to the agreement in Defendant's Motion to Transfer [the cause to Judge Alsip] and the qualifications as set out in rhetorical paragraphs [5[11]](A) and (B) of that document, attached hereto and marked as Exhibit A." *Patton I* Tr. at 151. Paragraph 5(B) of the motion to transfer provides,

In the event the defendant elects not to plead guilty as charged to all counts as per paragraph [5](A) above, or the plea of guilty is not completed for whatever reason, both the parties agree that this

---

**10.** *See Patton I,* 517 N.E.2d at 376 ("In Indiana we will not execute people who plead guilty and then protest innocence at their sentencing hearing. When the trial court heard Patton's claim of innocence, it should have set the matter for trial. The way to resolve the factual questions raised by Patton at sentencing is through submission to a trier of fact.").

**11.** The guilty plea document refers to "rhetorical paragraphs 6(A) and (B)", but this is obviously a scrivener's error.

Motion to Transfer is null and void and that the trial by jury will proceed on June 4, 1984 [before Judge Gifford] as scheduled.

*Id.* at 146. Finally, paragraph 7 of the plea agreement provides, "The agreement embodies the entire agreement between the parties and no promises have been made or inducements given to the defendant by the State which are not part of this written agreement." *Id.* at 152.

Patton contends that the *Patton I* court's reversal of his murder conviction invalidated part of the guilty plea agreement. He further contends,

> Because part was invalid, the entire plea was invalid and Patton was entitled to a jury trial on all counts. According to [his guilty plea counsel's] understanding of the terms of the plea, if the plea to any single count could not be accepted then the entire case would go back to Judge Gifford for a retrial of every count.

Appellant's Br. at 8.

■ Patton's claim is without merit.[12] It is well settled that

> [a] plea agreement is a contract, an explicit agreement between the State and defendant which is binding upon both parties when accepted by the trial court. Because a plea agreement is a contract, the principles of contract law can provide guidance in the consideration of

plea agreements. The primary goal of contract interpretation is to give effect to the parties' intent. When the terms of a contract are clear and unambiguous, they are conclusive of that intent, and the court will not construe the contract or look to extrinsic evidence. Rather, we will merely apply the contractual provisions.

*Griffin v. State,* 756 N.E.2d 572, 574 (Ind. Ct.App.2001) (citations and quotation marks omitted), *trans. denied* (2002).

We agree with the post-conviction court's conclusion that "[t]he guilty plea was 'completed' as stated in the agreement. The agreement made no specific provision for what would happen if Patton's conviction on one or more counts was later overturned." Appellant's App. at 138. Given that the guilty plea document "embodies the entire agreement between the parties," we cannot conclude that the plea agreement was invalidated by the *Patton I* court's reversal of his murder conviction.

## II. Double Jeopardy

■ Patton contends that his conviction for dealing in a sawed-off shotgun violates state and federal double jeopardy principles [13] and that his plea of guilty was therefore unknowing, involuntary, and unintelligent. The State correctly observes that a guilty plea generally acts as a waiver of double jeopardy claims. *See, e.g.,*

---

12. We do not address the State's contention that Patton's claim is either precluded under law of the case doctrine or waived because of his failure to raise it prior to his murder trial. Our review is somewhat complicated by the *Patton I* court's reversal of his murder conviction despite the "long-standing principle that 'a conviction based upon a guilty plea may not be challenged by motion to correct errors and direct appeal.'" *Tumulty v. State,* 666 N.E.2d 394, 395 (Ind.1996) (quoting *Weyls v. State,* 266 Ind. 301, 302, 362 N.E.2d 481, 482 (1977)); *cf.* Ind.Code § 35–50–2–9 (providing for automatic review of death *sentence* by

supreme court). Given the unusual disposition of *Patton I,* we decline to determine whether Patton should have sought rehearing to request a new trial on all counts or made such a request of Judge Gifford prior to his murder trial.

13. *See* U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Ind. Const. art. I, § 14 ("No person shall be put in jeopardy twice for the same offense.").

*Mapp v. State*, 770 N.E.2d 332, 334–35 (Ind.2002) ("Plea bargaining is a tool used by both prosecutors and defendants to expedite the trial process. Defendants waive a whole panoply of rights by voluntarily pleading guilty. These include the right to a jury trial, the right against self-incrimination, the right of appeal, and the right to attack collaterally one's plea based on double jeopardy.") (footnote omitted).[14] As for Patton's contention that his plea was not knowing, voluntary, or intelligent, we note that in the cases on which he relies, the convictions and sentences were vacated because the sentences violated express statutory authority. *See Thompson v. State*, 634 N.E.2d 775 (Ind.Ct.App.1994); *Sinn v. State*, 609 N.E.2d 434 (Ind.Ct.App. 1993), *trans. denied.* Such is not the case here. Patton has failed to establish that he is entitled to relief on this ground.

### III. Attempted Murder

A person may not be convicted of attempted murder without proof that the person specifically intended to kill his victim. *Spradlin v. State*, 569 N.E.2d 948, 949–50 (Ind.1991). Patton was never advised prior to the entry and acceptance of his guilty plea that the State, in order to obtain a conviction for attempted murder, was required to prove that Patton specifically intended to kill Maxey when he shot into the vehicle. Patton argues that his plea of guilty to the attempted murder charge was therefore invalid.

Before a trial court may accept a defendant's guilty plea, the trial court must find that the defendant understands the nature of the charge against him. IND. CODE § 35–35–1–2(c)(1). This is because a defendant's guilty plea is not valid unless it is knowing, voluntary, and intelligent. *Davis v. State*, 675 N.E.2d 1097, 1102 (Ind. 1996). A plea of guilty is not "voluntary in the sense that it constitute[s] an intelligent admission that [a defendant] committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941). A trial court does not need to advise a defendant of the specific elements of an offense to find that the defendant understands the charge. *DeVillez v. State*, 275 Ind. 263, 416 N.E.2d 846, 849 (1981)). A trial court must, however, confirm that the defendant is "aware" of the elements of the offense. *State v. Sanders*, 596 N.E.2d 225, 228 (Ind.1992), *cert. denied*, 507 U.S. 960, 113 S.Ct. 1385, 122 L.Ed.2d 760 (1993). A defendant may be sufficiently aware of an element in the absence of a specific advisement when the defendant acknowledges his guilt of the offense on the basis of facts that establish his guilt of the particular element in question. *See*

---

**14.** Patton cites *Channell v. State*, 658 N.E.2d 925 (Ind.Ct.App.1995), *trans. denied* (1996), for the proposition that double jeopardy violations are fundamental error. Our supreme court has stated that "[t]he issue of fundamental error is better determined on a case by case basis." *Taylor v. State*, 717 N.E.2d 90, 95 n. 7 (Ind.1999). At most, Patton would be entitled to the vacation of his conviction and two-year sentence for dealing in a sawed-off shotgun, which is obviously *de minimis* in view of his aggregate sentence. On a related note, Patton contends that his convictions for rape, criminal deviate conduct, and criminal confinement should be reduced because they were enhanced by the element of "committed while armed with a deadly weapon." While enhancement of one offense for the very same behavior or harm as another is impermissible, nothing prohibits conviction and sentencing for multiple crimes with a common element. *See Carrico v. State*, 775 N.E.2d 312, 314 (Ind.2002).

*id.*[15]

This Court applied these principles in *Howse v. State*, 672 N.E.2d 441 (Ind.Ct. App.1996), *trans. denied* (1997). In *Howse*, as here, the defendant pleaded guilty to attempted murder for shooting a man. He later claimed that his plea was involuntary because he had not been told that the charge required proof that he specifically intended to kill his victim. We concluded that despite the lack of a specific advisement, Howse was sufficiently aware of this element. In particular, we recognized that "[t]he intent to commit murder may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm." *Id.* at 444. We noted that during the guilty plea hearing, Howse admitted facts that supported the inference that he acted with the requisite intent to kill. In particular, Howse admitted that he fired two shots at his victim. We concluded that this admission was sufficient to show that Howse understood the nature of his

attempted murder charge and was aware of the elements of the offense, including the requirement that the State prove his specific intent to kill his victim. *Id.*[16]

In this case, Patton was never told that the State, in order to obtain a conviction for attempted murder, would have to prove that Patton specifically intended to kill Maxey when he shot into the vehicle. Moreover, while the prosecutor read the charging information to Patton, the information alleged only that Patton "knowingly" tried to kill Maxey. His verbal acknowledgment of the truth of the allegation therefore did not establish his awareness of the specific intent to kill requirement. Further, unlike in *Howse*, Patton's understanding of this element was not supported by an acknowledgement of guilt on the basis of facts giving rise to the inference that Patton specifically intended to kill Maxey. Patton admitted to shooting into the vehicle but never acknowledged that he shot at Max-

---

**15.** In *Sanders*, the defendant pleaded guilty to manslaughter as a lesser-included offense of his murder charge. He was never advised of the elements of involuntary manslaughter, and in particular was not told of the offense he was alleged to have attempted to commit when he killed his victim. *See* IND.CODE § 35–42–1–4(c) ("A person who kills another human being while committing or attempting to commit ... a Class C or Class D felony that inherently poses a risk of serious bodily injury; ... a Class A misdemeanor that inherently poses a risk of serious bodily injury; or ... battery ... commits involuntary manslaughter, a Class C felony.") The Indiana Supreme Court found, however, that the defendant sufficiently understood the elements of the charge because the defendant acknowledged "that he recklessly pointed a shotgun at [the officer]." *Sanders*, 596 N.E.2d at 228.

**16.** Judge Sullivan dissented in *Howse*, finding it "strange indeed that a guilty plea may be accepted without the information as to specific intent required to be given a jury being

imparted to the defendant whether by trial court advisement or otherwise," in light of the rule that "before a jury may convict [a defendant] of attempted murder it must be instructed that the act was committed with the specific intent to kill." 672 N.E.2d at 445 (Sullivan, J., dissenting) (citing *Spradlin*, 569 N.E.2d 948). We find the reasoning behind Judge Sullivan's concerns to be compelling, but recognize that, as noted above, the precedent from our supreme court plainly holds that a trial court does not need to advise a defendant of the specific elements of an offense to find that the defendant understands the charge. *See Sanders* 596 N.E.2d at 228; *DeVillez*, 416 N.E.2d at 849. Of course, the best practice in a guilty plea setting is for the trial court to specifically advise and receive acknowledgement from the defendant that he heard and understands the nature of each and every element of the crime to which he is pleading guilty. Because of the critical need to ascertain whether the plea has been given knowingly, voluntarily and intelligently, we implore trial courts to follow this practice.

ey or that he knew Maxey was in the vehicle when he shot.

Thus, Patton was not sufficiently aware that the State had to prove his specific intent to kill Maxey, and he therefore did not sufficiently understand the nature of the charge to which he pleaded guilty. We therefore reverse the denial of post-conviction relief on this ground and remand with instructions to grant Patton a new trial on the attempted murder charge.

### IV. Voir Dire Statements

■ Patton claims that during voir dire, his trial counsel informed prospective jurors (including several seated jurors) of his prior guilty plea and our supreme court's reversal of his murder conviction. Patton contends that trial counsel's actions are fundamental error[17] and warrant a retrial.

Our supreme court recently emphasized that "[i]n post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). The State points out that Patton failed to raise this issue in appealing his murder conviction in *Patton III*. In his reply brief, Patton claims for the first time that "this claim was not available on direct appeal [because the] voir dire phase of the trial was not transcribed and included in the Record of Proceedings filed in [*Patton III*.]" Appellant's Reply Br. at 5.

■ We first observe that "a party cannot raise an argument for the first time on appeal in its reply brief." *State v. Friedel*, 714 N.E.2d 1231, 1243 (Ind.Ct. App.1999). Moreover, Patton has failed to establish that this issue was demonstrably unavailable on appeal; appellate counsel could have requested a transcript of the voir dire proceedings but did not do so. Consequently, we must decline to address Patton's fundamental error claim and affirm the denial of post-conviction relief on this ground.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., concurs.

BROOK, C.J., concurs in part and concurs in result in part with separate opinion.

BROOK, Chief Judge, concurring in part and concurring in result in part.

In my view, if the concept of an intelligent guilty plea is to have any meaning in an attempted murder context, then a defendant must be aware that the State would have to prove that he specifically intended to kill the victim. Without more, a defendant's admission to a factual basis that would support an attempted murder conviction is wholly insufficient in this regard.[18] As did Judge Sullivan in *Howse*,

---

17. In the case Patton cites for this proposition, the State introduced statements from the appellant's guilty plea hearing at trial. *See Tyree v. State*, 518 N.E.2d 814 (Ind.Ct.App. 1988).

18. The *Howse* majority observed that "[t]he intent to commit murder may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm." *Howse*, 672 N.E.2d at 444. It is important to note, however, that this point of law was culled from a case in which the defendant challenged the sufficiency of the evidence supporting his attempted murder conviction, not the validity of a guilty plea. *See Allen v. State*, 575 N.E.2d 615, 616 (Ind. 1991). A defendant may deliberately use a deadly weapon with the intent to intimidate or injure another person or even in a reckless manner; for this reason, I believe that a defendant cannot intelligently plead guilty to the more serious crime of attempted murder

"I find it strange indeed that a guilty plea may be accepted without the information as to specific intent required to be given a jury being imparted to the defendant whether by trial court advisement or otherwise." *Howse*, 672 N.E.2d at 445 (Sullivan, J., dissenting). The trial court gave Patton no such advisement here. Consequently, I concur in result as to the majority's reversal of Patton's attempted murder conviction and remand for a new trial. In all other respects, I fully concur in the majority's opinion.

without being aware of the corresponding   specific intent to kill.