**Keith PATTON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S02–0309–PC–402.

Supreme Court of Indiana.

June 22, 2004.

Daniel M. Grove, Special Assistant to the Public Defender of Indiana, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO.49A02–0211–PC–975

SULLIVAN, Justice.

Keith Patton pled guilty to attempted murder without knowing that specific intent to kill was an element of that offense. A defendant who pleads guilty need not be aware of each of the elements of the offense so long as the defendant receives

real notice of the true nature of the charge or that the absence of such notice is harmless beyond a reasonable doubt. However, there is no evidence that Patton received such notice with respect to the attempted murder charge or that he acted with specific intent to kill. We hold that under these circumstances, his guilty plea was invalid. Patton's sentence of 192 years for his other convictions remains in effect.

## Background

On October 22, 1983, 17–year–old Keith Patton, armed with a sawed-off shotgun, and Leroy Johnson, both intoxicated, came upon a parked automobile in which a young man was in the driver's seat and a young woman beside him. Patton fired a shot into the driver's side window that seriously injured the passenger, Dietra Maxey. Patton subsequently fired a second shot, also through the driver's side window. This shot killed the driver, Michael Pack. Patton and Johnson then sexually assaulted Maxey.

On June 1, 1984, Patton pled guilty to the offenses of murder (of Pack), attempted murder (of Maxey), rape, criminal confinement, three counts of criminal deviate conduct, and dealing in a sawed-off shotgun. At the sentencing hearing on July 31, 1984, Patton admitted killing Pack but he denied that he had had any intent to kill Pack. The trial court sentenced Patton to death for the murder of Pack, to 30 years for rape, and to an additional 132 years for the other crimes.[1]

Patton appealed his convictions for murder and rape only to this court. (He did not appeal his convictions for attempted murder and the other offenses.) We held that it had been improper for the trial court to accept Patton's guilty plea to murder when he had denied that he had had any intent to kill Pack. We reversed the murder conviction, vacated the death sentence, and remanded the case with instructions to retry the murder count and resentence Patton on the rape count. *Patton v. State*, 517 N.E.2d 374 (Ind.1987). After remand, the murder and rape charges were tried to a jury. Patton was convicted of both murder and rape and received a sentence of 90 years imposed consecutive to the sentences imposed for attempted murder and the other offenses, bringing the total sentence to 222 years. These convictions and sentences were affirmed on appeal. *Patton v. State*, 588 N.E.2d 494 (Ind.1992).[2]

In 1996, Patton filed a petition for post conviction relief from the murder, attempted murder, and other convictions. The petition was denied. Patton filed this appeal, making the following claims:

1. Patton's guilty plea to attempted murder was not knowing, voluntary, and intelligent;

2. Our court's earlier reversal of the murder conviction invalidated Patton's guilty plea to the other offenses to which he pled guilty;

3. Several of Patton's convictions were invalid because they violated double jeopardy; and

4. Patton's murder conviction should be reversed because trial counsel made improper statements regarding Patton's guilty plea during voir dire in the jury trial.

---

1. Patton was sentenced to 30 years for Attempted Murder, 30 years for each count of Criminal Deviate Conduct, 10 years for Confinement, 2 years for Dealing in a Sawed Off Shotgun, all sentences to run consecutively.

2. The murder prosecution was also the subject of another opinion of this Court. *See State ex rel. Patton v. Superior Court*, 547 N.E.2d 255 (Ind.1989).

*Patton v. State,* 789 N.E.2d 968, 976 (Ind. Ct.App.2003).

The Court of Appeals accepted the first of these four claims, finding that Patton's guilty plea to attempted murder was not knowing, voluntary, and intelligent because he was not sufficiently aware that specific intent to kill the victim was an element of the offense. *Id.* at 976. The State has petitioned to transfer, seeking review of this determination. We will discuss this issue *infra.* The Court of Appeals rejected Patton's three remaining claims. *Id.* at 973–74, 976. Patton has also petitioned to transfer, seeking review of these determinations. We grant transfer and summarily affirm the opinion of the Court of Appeals on these three issues. *See* Ind. Appellate Rule 58(A)(2).

### Discussion

### I

In order to accept a guilty plea consistent with applicable law, the trial court must determine that a defendant is aware of the nature of the charge to which he or she is pleading guilty. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); Ind.Code § 35–35–1–2(a)(1). There has been confusion over the extent to which, in order for a defendant to be aware of the nature of the charge, the defendant must be advised of and understand each element of the charge at the time defendant pleads guilty.

Our analysis starts with *Henderson v. Morgan.* In that case, a petitioner for habeas corpus relief sought to have his conviction for second-degree murder vacated on grounds that his guilty plea was involuntary because, *inter alia,* he had not been aware that intent to cause death was an essential element of the offense. The district court granted habeas relief, finding that the petitioner had not been advised by counsel or the state court that an intent to cause death was a central element of sec-

ond-degree murder. The Supreme Court also granted relief, holding that because the petitioner had not received "adequate notice of the offense to which he pleaded guilty, his plea was involuntary and the judgment of conviction was entered without due process of law." *Id.* at 647, 96 S.Ct. 2253.

The Supreme Court went on to say three things of consequence to the issue of whether a defendant must be advised of and understand each element of the charge at the time the defendant pleads guilty.

First, the Court said, "There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; we assume it does not. Nevertheless, intent is such a critical element of the offense of second-degree murder that notice of that element is required." *Id.* at 647, n. 18, 96 S.Ct. 2253.

Second, the Court seemed to hold that, where the record of the guilty plea proceeding does not contain a complete enumeration of the elements of the offense to which an accused person pleads guilty, either an explanation [in the record] of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused would be sufficient to satisfy the requirement that the defendant receive notice of the true nature, or substance, of a charge. *Id.* at 646–647, 96 S.Ct. 2253. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent. *Id.* at 647, 96 S.Ct. 2253.

Third, the Court made clear that any error in providing the requisite notice is subject to harmless error analysis. *Id.* at 647, 96 S.Ct. 2253. Because any error in this regard would be of constitutional dimension, however, it would have to be harmless beyond a reasonable doubt to avoid reversal. *Id.; see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

After *Henderson v. Morgan,* our court has had three occasions to address the issue of whether a defendant must be advised of and understand each element of the charge at the time the defendant pleads guilty.

The first of these three is our opinion in *DeVillez v. State.* Among the claims raised by the petitioner seeking post-conviction relief in that case was that the trial court at the guilty plea proceeding had failed to advise her of the elements of the charge of first degree murder to which she had pled guilty. 275 Ind. 263, 267, 416 N.E.2d 846, 849 (Ind.1981). Justice De-Bruler wrote for a unanimous court that, at the guilty plea hearing, the petitioner had made a factual statement and tendered a written admission in which she had "flatly, unmistakably and completely admit[ted] facts which permit[ted] of only one appraisal, namely that it [was] an admission of each element" of the charged offense. *Id.* The opinion went on to say that [s]uch a voluntary admission by the accused of each element of an offense is sufficient as a basis for the plea judge's determination that the accused is aware of the true nature of the charge against her and comports with due process." *Id.* (citing *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)).

The *DeVillez* court agreed with the petitioner that the guilty plea statute required that there be a rational basis for the judge's determination that the accused understands the nature of the charge. But the court "reject[ed] the position of [the petitioner] that such requirement can only be satisfied by an advisement by the court of the separate elements of the offense. That, of course, remains one good way to make the determination, and we encourage it." *DeVillez,* 275 Ind. at 267, 416 N.E.2d at 849.

The second is *Coker v. State.* Among the claims raised by the petitioner seeking post-conviction relief in that case was that her guilty plea to the offenses of criminal confinement and robbery was not entered knowingly, intelligently, and voluntarily because the trial court did not advise her of the elements of those offenses. 499 N.E.2d 1135, 1137 (Ind.1986). Chief Justice Givan wrote that while the statute governing guilty pleas "requires that a defendant entering a plea of guilty understand 'the nature of the charge against him,' the statute does not ... require that the defendant understand the elements of that charge." *Id.* Post-conviction relief on this claim was denied because it was apparent from the record that [petitioner] did understand the charges against her. *Id.* (Neither *Henderson v. Morgan* nor *DeVillez* was mentioned in *Coker.* Although Justice DeBruler (the author of *DeVillez* ) dissented in *Coker,* he did not explain the reason for his dissent.)

The third case is *State v. Sanders.* The post-conviction court had held that the petitioner's guilty plea to the offense of involuntary manslaughter had not been knowingly, voluntarily, and intelligently entered because, *inter alia,* he had not been advised of the specific elements of the offense to which he pled guilty. 596 N.E.2d 225, 227 (Ind.1992). In the course of finding that there had been insufficient evidence to sustain the post-conviction court's holding, Justice Krahulik wrote for a unanimous court that the undisputed evidence

from the transcript of the guilty plea hearing satisfies the constitutional requirement set forth in *Henderson v. Morgan* that Sanders was *aware of the elements of the offense* of involuntary manslaughter when he pled guilty. *See DeVillez." Id.* at 228 (citations omitted; emphasis supplied). (*Coker* was not mentioned in *Sanders*, an opinion in which Justice Givan (the author of *Coker* ) concurred.)

This brings us to the decision of the Court of Appeals in *Howse v. State*, a case that, as the State noted at oral argument, is similar to the case before us. 672 N.E.2d 441 (Ind.Ct.App.1996), *transfer denied.* In *Howse*, the petitioner in post-conviction proceedings sought to set aside a plea of guilty to the offense of attempted murder on grounds that he did not understand the nature of the charge to which he pled guilty. Specifically, he argued that because he did not understand that the offense of attempted murder requires proof that a defendant acted with the specific intent to kill, he did not understand the nature of the offense to which he pled guilty. *Id.* at 443.

The Court of Appeals discussed *DeVillez, Coker,* and *Sanders*, noting the differences among the three. It concluded that it was required to follow *Sanders*, the most recent of the three decisions, and concluded that *Sanders* stood for the proposition that awareness of the elements of the offense was required. Observing that *Sanders* had been resolved by looking at the evidence presented at the guilty plea hearing and concluding that Sanders had been aware of the elements of the offense to which he pled guilty, the court examined the facts surrounding Howse's guilty plea and reached the same conclusion. *Id.* at 444.

Judge Sullivan dissented in *Howse.* He discussed the "relative complexity inherent in the crime of attempted murder," namely, "the subtleties of the specific intent to kill requirement" and concluded that the petitioner's guilty plea was not shown to have been made knowingly or intelligently because "there was no suggestion that [he] was even remotely aware that before he could be convicted of attempted murder the State would have had to prove that" he had acted with the specific intent to kill. *Id.* at 445.

This brings us to Patton's case. In it, the Court of Appeals followed the template set forth in *Howse.* That is, it started with the proposition that Patton was required to be aware of the element of specific intent and that this awareness could be shown by looking at the evidence presented at the guilty plea hearing. But unlike *Howse*, where the Court of Appeals concluded that Howse's admission of guilt at the guilty plea hearing was sufficient to establish his awareness of the element of specific intent, the Court of Appeals found here that the evidence presented at Patton's guilty plea hearing was not sufficient to establish his awareness of the element of specific intent. Here is the Court of Appeals analysis of the evidence presented at the guilty plea hearing:

In this case, Patton was never told that the State, in order to obtain a conviction for attempted murder, would have to prove that Patton specifically intended to kill Maxey when he shot into the vehicle. Moreover, while the prosecutor read the charging information to Patton, the information alleged only that Patton "knowingly" tried to kill Maxey. His verbal acknowledgment of the truth of the allegation therefore did not establish his awareness of the specific intent to kill requirement. Further, unlike in *Howse*, Patton's understanding of this element was not supported by an acknowledgement of guilt on the basis of facts giving rise to the inference that

Patton specifically intended to kill Maxey. Patton admitted to shooting into the vehicle but never acknowledged that he shot at Maxey or that he knew Maxey was in the vehicle when he shot.

Thus, Patton was not sufficiently aware that the State had to prove his specific intent to kill Maxey, and he therefore did not sufficiently understand the nature of the charge to which he pleaded guilty. We therefore reverse the denial of post-conviction relief on this ground and remand with instructions to grant Patton a new trial on the attempted murder charge.

*Patton,* 789 N.E.2d at 975–976.

## II

The State seeks transfer in this case, asking for a declaration of the extent to which a defendant must be advised of and understand each element of the charge at the time defendant pleads guilty. It argues that the Court of Appeals was wrong in *Howse* and in this case to find a constitutional requirement that a defendant be aware of the elements of the offense to which the defendant pleads guilty. Rather, the State contends, this Court's opinion in *Coker* accurately stated the law when it concluded that while a defendant must understand the nature of the charge, that does not require the defendant to understand the elements of that charge.

■ We believe that two levels of analysis are required here. As a matter of federal constitutional law, *Henderson v. Morgan* controls. We believe that that case stands for four principles of relevance here:

(1) that a defendant has a constitutional right to " 'real notice of the true nature of the charge' " to which the defendant pleads guilty, *Henderson v. Morgan* 426 U.S. at 645, 96 S.Ct. 2253 (*quoting Smith v. O'Grady,* 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941));

(2) that that right will have been honored where the record of the guilty plea hearing "contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused[;] even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explained the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit," *Henderson v. Morgan* 426 U.S. at 647, 96 S.Ct. 2253;[3] and

(3) where intent is "a critical element of the offense . . ., notice of that element is required," *Id.* at 647, n. 18, 96 S.Ct. 2253.

(4) even where the notice required has not been given and cannot be presumed, a defendant is not entitled to relief if the error is harmless beyond a reasonable doubt. *Id.; see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ For purposes of the issue presented in Patton's case, we hold that failure of notice that specific intent is an element of attempted murder will constitute harmless error, *i.e.,* be harmless beyond a reasonable doubt, where during the course of the guilty plea or sentencing proceedings, the defendant unambiguously admits to, or there is other evidence of, facts that dem-

---

**3.** The Supreme Court has subsequently held that providing a defendant with a copy of the indictment gives rise to a presumption that the defendant was informed of the nature of the charge. *Bousley v. United States,* 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (U.S.1998) (*citing Henderson v. Morgan,* 426 U.S. at 647, 96 S.Ct. 2253).

onstrate specific intent beyond a reasonable doubt.

As a matter of state law, the Legislature has prescribed that:

> The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant: (1) understands the nature of the charge against him; ... Any variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty.

Ind.Code § 35–35–1–2(a) & (c). Given the explicit language of this statute, we hold that it does not impose any greater obligations on the court receiving a guilty plea nor confer any greater rights on a defendant pleading guilty than those imposed and provided in *Henderson v. Morgan.*

### III

█ In many and perhaps most cases in which the issue of notice of the elements of an offense to which a defendant pleads guilty, intent will not be a critical element of the offense. *See, e.g., DeVillez,* 275 Ind. 263, 416 N.E.2d 846, and *Coker,* 499 N.E.2d 1135, discussed *supra.* Except a critical element of the offense, we believe that *Henderson v. Morgan* does not require notice of the element to satisfy the due process mandate of real notice of the true nature of the charge. However, for the following reasons, we believe that the specific intent element of attempted murder is a "critical element of the offense" to which Patton pled guilty within the meaning of *Henderson v. Morgan* such that notice of the element was required.

A quarter-century ago, we explained the importance of a defendant possessing the specific intent to kill as a necessary element of attempted murder. *Zickefoose v. State,* 270 Ind. 618, 622, 388 N.E.2d 507,

510 (1979). Shortly after Patton committed the crimes that are the subject of this proceeding—but before he entered his guilty plea—we explained that an instruction that correctly sets forth the elements of attempted murder requires an explanation that the act must have been done with the specific intent to kill. *Smith v. State,* 459 N.E.2d 355, 358 (Ind.1984). In 1991, we reaffirmed that attempted murder instructions must include the required mens rea of specific intent to kill. *Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991) (holding that to convict a defendant of attempted murder, the defendant must have intended to kill the victim at the time that the defendant took a substantial step toward committing murder). And in *Simmons v. State,* 642 N.E.2d 511 (Ind.1994), a post-conviction case, we granted relief on grounds that the petitioner's jury had not been instructed that specific intent was an element of attempted murder in a case in which judgment was entered prior to the date of Patton's guilty plea.

The post-conviction court denied Patton relief on his claim. In the appellate review of a post-conviction court's negative judgment denying post-conviction relief, our role is to determine whether the undisputed evidence, subject to the post-conviction court's opportunity to judge credibility, unerringly and unmistakably leads us to an opposite conclusion. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995). The post-conviction court made two findings on the subject:

1. The evidence indicates that neither the court nor Patton's attorney specifically advised Patton of the element of specific intent.

2. [T]here is adequate evidence from the record of the guilty plea proceeding to infer that Patton was aware of the elements of the offense of attempted murder. As in *Sand-*

*ers* and *Howse,* Patton admitted to a factual basis which supported a specific intent to kill.

(App. to Br. of Pet'r–Appellant at 138–139.) The evidence in the record is without conflict in support of the first of these two findings. During the post-conviction hearing, Patton's post-conviction counsel asked Patton's trial counsel, "So would it be fair to say that you would not have advised Keith that in order for him to be guilty of the attempted murder of Deitra Maxey that he had to have specifically intended to kill her?" Trial counsel responded, "I'm sure I didn't." P–C Tr. at 25.[4]

■ As part II, *supra,* makes clear, where a defendant has not been given notice of the specific intent element of attempted murder and notice cannot be presumed, the defendant will nevertheless not be entitled to relief where the defendant, during the course of the guilty plea or sentencing proceedings, unambiguously admits to, or there is other evidence of, facts that demonstrate specific intent beyond a reasonable doubt. However, the post-conviction court here does not set forth any of the facts from which it draws its second conclusion that there is "adequate evidence … to infer that Patton was aware of the elements of the offense of attempted murder." There are simply no findings of fact by the post-conviction court to support this conclusion—a conclusion that falls short of the beyond-a-reasonable doubt standard.

In its brief, the State argues:

In this case, Petitioner acknowledged that he approached the car with a shotgun, pointed the gun at the window, and fired into the car, striking and seriously injuring Maxey. Petitioner also acknowledged that when Pack attempted to drive away, he fired a second shot into the car which struck and killed Pack, and that he proceeded to force Maxey to engage in several sexual acts with him.

[State's] Petition for Transfer at 6 (citations to record omitted). We do not find anything in these three sentences that support a finding of specific intent beyond a reasonable doubt. The first sentence omits the crucial fact that the shot that seriously injured passenger Maxey was fired through the driver's side. The second two sentences contribute nothing in the way of information about Patton's mental state when he fired the shot that injured Maxey.

In sum, neither the post-conviction court's findings nor the State's brief provide us with any evidence that Patton acted with the specific intent to kill Maxey. Nor does our own review of the evidence at the guilty plea or sentencing hearings. And even if an inference of specific intent could be drawn from the post-conviction court's findings, the State's brief, or our own review of the evidence at the guilty plea and sentencing hearings, such an inference falls well short of demonstrating specific intent beyond a reasonable doubt.

We start with the relevant excerpt from the guilty plea hearing:

The Court: Alright, Keith, now I have six more Counts here to read to you that you will be, by virtue of changing your plea, admitting to. … Keith Patton, on or about the 22nd day of October, 1983, in Marion County, Indiana, Count I, did knowingly attempts to commit the crime of Murder by knowingly attempting to

4. There are five separately numbered records in this case. Materials from two of those records are referenced in this opinion. The transcript of the post-conviction proceeding that is the subject of this appeal is referred to as the Post—Conviction Transcript (P–C Tr.). The record of the initial guilty plea and sentencing proceedings that took place before Judge Thomas E. Alsip are referred to as the Supplemental Alsip Record (Supp. Alsip R.).

kill another human being, Deitra Maxey, by shooting at and against the person of Deitra Maxey by means of a deadly weapon, a shotgun, which constituted a substantial step toward the commission of said crime of Murder.... Those six Counts, ... you will be admitting as true those facts. Is that what you want to do, Keith? You want to admit that as true?

(Supp. Alsip R. at 18, 21.) Patton answered, "Yes." We think it apparent that there is nothing in this dialogue from which any inference of specific intent can be drawn.

Second, we, like the Court of Appeals, have been unable to locate anything in the record indicating that Patton ever acknowledged shooting at Maxey or even knowing that Maxey was in the vehicle when he shot. *Patton*, 789 N.E.2d at 975–976.

Finally, we note that at his sentencing hearing, Patton admitted that he had killed Pack but denied that he had killed him intentionally. We reversed the trial court's acceptance of Patton's guilty plea. While not compelled as a matter of logic, it seems to us likely that just as Patton denied intentionally killing Pack when questioned on the intent element of the offense of murder, Patton would have denied specifically intending to kill Maxey if he had been on notice of the specific intent element of the offense of attempted murder.

The earlier-mentioned fact that the shot that seriously injured passenger Maxey was fired through the driver's side, (Supp. Alsip R. at 38), lends support to our conclusion in each of the three preceding paragraphs.

At the time Patton pled guilty to the offense of attempted murder, he did not know that specific intent to kill was an element of the offense. And we find nothing in the findings of the post-conviction court or in our own review of the evidence that would support a conclusion that Patton acted with specific intent to kill when he fired the shot that injured Maxey. We find that the undisputed evidence leads us to a conclusion opposite that of the post-conviction court and that Patton's guilty plea to the offense of attempted murder did not comport to *Henderson v. Morgan*'s mandate that Patton receive "real notice of the true nature of the charge against him," 426 U.S. at 645, 96 S.Ct. 2253.

### Conclusion

We grant transfer, summarily affirm portions of the opinion of the Court of Appeals as set forth under *Background, supra*, and affirm the judgment of the post-conviction court except that Patton's conviction and sentence for attempted murder are vacated. Patton's sentence of 192 years for his other convictions remains in effect. This case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., DICKSON, BOEHM, and RUCKER, JJ., concur.