**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 22 2014, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**BORAHM KIM**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| COREY A. CRAIG, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1311-PC-568 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Angela Warner Sims, Judge
Cause No. 48C01-1008-PC-308

**August 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Corey A. Craig appeals from the post-conviction court's order denying his petition for post-conviction relief, contending that his trial counsel was ineffective and that he was prejudiced by that inadequate representation. We affirm.

## ISSUES

Craig presents the following issues for our review:

I.     Whether there was a sufficient factual basis for his plea of guilty to intimidation as a Class C felony;

II.    Whether his guilty plea was knowingly, intelligently, and voluntarily made; and

III.   Whether the post-conviction court erred by denying Craig's petition for post-conviction relief alleging ineffective assistance of trial counsel.

## FACTS AND PROCEDURAL HISTORY

Without the benefit of a plea agreement, Craig pleaded guilty to child molesting[1] as a Class A felony, criminal confinement[2] as a Class B felony, and intimidation[3] as a Class C felony. The facts set forth in our memorandum opinion affirming Craig's sentence on direct appeal are as follows:

> On March 8, 2004, officers from the Anderson Police Department were dispatched to Saint John's Hospital in reference to a six-year-old child, F.N., being treated for vaginal injuries. F.N. had been taken to the hospital with injuries and bleeding to her vaginal area. These injuries required emergency surgery. Initial information revealed F.N. was home with Craig and Darrel Gene Bradberry and received a straddle-type injury while playing with Craig and Bradberry. After the emergency surgery, the cut was found

---

[1]  Ind. Code § 35-42-4-3(a)(2) (1998).

[2]  Ind. Code § 35-42-3-3(b)(2)(A) (2002).

[3]  Ind. Code § 35-45-2-1(b)(2)(A) (2003).

2

to be larger than doctors originally believed. Further, F.N.'s doctors indicated to police that the injuries were not consistent with a straddle-type injury, but, rather, more consistent with a cutting-type injury.

F.N. was interviewed. She initially gave an account consistent with the reported straddle-type injury. Upon further inquiry, however, she indicated that Craig and Bradberry had held her down at the house while both of them had a knife and one of them had a fork. While restraining the child, the young men proceeded to insert a knife and fork into her vagina causing her injury and bleeding. They then threatened F.N. that if she said anything about what had happened they would put her in a large grill that was outside the residence and feed her to a large dog that was at the residence.

*Craig v. State*, No. 48A02-0511-CR-1030, slip op. at 2-3 (Ind. Ct. App. April 28, 2006).

The trial court sentenced Craig to the presumptive sentence for each of the offenses: thirty years, ten years, and four years, respectively. The trial court ordered the sentences for child molesting and criminal confinement to be served concurrently, and ordered the sentence for intimidation to be served consecutively to the sentence for child molesting, for an aggregate sentence of thirty-four years.

After his sentence was affirmed on direct appeal, Craig filed a pro se petition for post-conviction relief that was later amended by counsel on January 29, 2013. The post-conviction court held a hearing on the petition after which it issued findings of fact and conclusions thereon denying Craig's petition. Craig now appeals.

DISCUSSION AND DECISION

Craig appeals from the post-conviction court's denial of his petition for post-conviction relief. "A petitioner who has been denied post-conviction relief faces a rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). The post-conviction court's denial of relief will be affirmed unless the petitioner shows that the evidence "leads unerringly and unmistakably to a decision opposite that reached by the

3

post-conviction court." *Rowe v. State*, 915 N.E.2d 561, 564 (Ind. Ct. App. 2009), *trans. denied.* A petitioner has the burden of establishing the grounds for relief by a preponderance of the evidence. Indiana Post-Conviction Rule 1(5). Accordingly, a petitioner appeals from a negative judgment. *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007).

This court will not disturb the denial of relief unless the evidence is without conflict and leads to but one conclusion, and the post-conviction court reached the opposite conclusion. *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000). Furthermore, this court accepts the post-conviction court's findings of fact unless they are clearly erroneous. *Bigler v. State*, 732 N.E.2d 191, 194 (Ind. Ct. App. 2000), *trans. denied.* We consider only the probative evidence and reasonable inferences therefrom that support the post-conviction court's determination, and we will not reweigh the evidence or judge witness credibility. *Id.*

In general, claims of ineffective assistance of counsel are reviewed under a two-part test: (1) a demonstration that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) a showing that the deficient performance resulted in prejudice to the defendant. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice occurs when the defendant demonstrates that there is a reasonable probability that, if not for counsel's unprofessional errors, the result of the proceeding would have been different. *Grinstead*, 845 N.E.2d at 1031. A reasonable probability occurs when there is a probability sufficient to undermine confidence in the

4

outcome.  *Id.*  Failure to satisfy either prong of the two-part test will cause the defendant's claim to fail.  *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008).  If we can easily dispose of an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient.  *Id.*

Each of Craig's arguments originate from the difference between the statutory enhancement language describing the elevated offense of intimidation as a Class C felony and the language used in the charging information.  Craig contends that had the charging information language tracked the language of the intimidation statute, he would not have pleaded guilty.  Further, he claims that he could not be found guilty of intimidation as a Class C felony because of the defective wording of the charge and that there was no factual basis that he drew or used a fork or knife while intimidating F.N.

## I.   ADEQUACY OF THE FACTUAL BASIS

The version of the statute at the time of Craig's offenses provides in pertinent part as follows:

> A person who communicates a threat to another person, with the intent:  that the other person engage in conduct against the other person's will; commits intimidation, a Class A misdemeanor.  However, the offense is a: Class C felony if, while committing it, the person draws or uses a deadly weapon.

Ind. Code § 35-45-2-1.  Count III of the charging information against Craig alleged that he had committed Class C felony intimidation by communicating "a threat to [F.N.] while armed with a deadly weapon, to wit:  a knife and/or fork, with the intent that [F.N.] engage in conduct against her will, to wit:  not to report a sexual assault."  Direct Appeal App. p. 25.  Craig argues that the difference between "draws or uses a deadly weapon" and "while

5

armed with a deadly weapon" is significant enough that his decision to plead guilty was compromised because of his trial counsel's failure to note the defect.

The factual basis set forth by the State at Craig's guilty plea hearing was as follows:

More specifically, the State would present evidence to show that on March 8th of 2004, officers from the Anderson Police Department were dispatched to Saint John's Hospital reference a six-year-old child being treated for a vaginal injuries [sic]. Upon arrival the hospital staff indicated that [F.N.], date of birth 8-28 of '97 had . . . she had been taken to the hospital with injuries and bleeding to her vagina area. Upon observation by doctors, it was determined that there was a cut in her vaginal area. These injuries required emergency surgery which was performed by a Doctor Gist. . . . The information given at the hospital and initially to the police were [sic] that [F.N.] was at the residence of 2121 Hendricks Street which was her home in Anderson, Madison County, Indiana. And at the time of the injuries she was home alone with the defendant, Corey A. Craig and a [D.B.] The information initially received was that the . . . Mr. Craig and [D.B.] were playing with [F.N.] and that she had injured her vaginal [sic] in a straddle-type injury, either at one point by pulling her legs a part and another point of the story was that she had fallen over a couch. After the emergency surgery was performed, the cut was larger than what they believed to begin with. Both the E.R. physician, Dr. Hanna and the surgeon, Dr. Gist, indicated to police that the injuries were not consistent with a straddle-type injury and that it was more consistent with a cutting type injury. [F.N. was interviewed. Initially she gave the same story that it was a straddle-type injury. However, upon interviewing her further, she did indicate that the defendants *Corey A. Craig and [D.B.] had her held . . . held her down at the house and that both of them had a knife and one had a fork. Had inserted the knife and the fork into her vagina causing her injury and bleeding.* She also indicated that the two individuals had *threatened her that if she told about what had happened* they had indicated that one, they would put her in a large grill that was outside the residence and they also indicated that they would feed her to a large dog that was at the residence. *She was held down during this time when she was hurt while they had a knife and fork that injured her and her vagina, against her will.* All these events occurred here in Madison County, State of Indiana.

Direct Appeal Tr. pp. 14-16 (emphasis added). After the factual basis was recited, Craig indicated that he had heard the prosecutor's statements and that they were true. All parties

6

stated that they were satisfied with the factual basis and the trial court accepted Craig's guilty plea.

The post-conviction court took judicial notice of the prior proceedings and the filings, pleadings, and record in the case. Included among those items is the probable cause affidavit supporting the charges filed against Craig. The probable cause affidavit provided as follows:

> On 3/8/04, APD officers were dispatched to St. John's Hospital at 2015 Jackson St. reference a 6 year old child, [F.N.], being treated for vaginal injuries not consistent with those of an accident. These injuries required emergency surgery, which was performed by Dr. Gist. Both the ER physician, Dr. Hanna, and the surgeon, Dr. Gist, felt these injuries were not the result of an accident. The persons acting as caregiver to the child at the time of her injuries were Corey A[.] Craig and Darrel Gene Bradberry. The day following the victim's surgery, she gave a video statement in which she advised that Corey Craig and Darrel Bradberry held her down and inserted a knife and fork into her vagina and threatened her with physical harm if she told anyone of the incident. The insertion of the foreign objects into her vagina caused pain and bleeding. Both suspects took steps to conceal the results of their actions. Both initially advised that the victim's injuries had occurred while engaging in play, however Darrell [sic] Bradberry later provided a videotaped statement acknowledging that the acts had occurred, but that he was only an observer.
>
> Corey Alan Craig & Darrel Gene Bradberry, with a child under 14 years of age, performed deviate sexual conduct resulting in serious bodily injury by inserting foreign objects into the vagina of a 6 year old girl causing such injury as to require surgery. Corey Alan Craig & Darrel Gene Bradberry knowingly and intentionally confined the aforementioned victim by holding her down with her arms crossed on her chest and her legs pinned towards her head and refusing to allow her to leave during the assault. Both subjects threatened physical bodily harm to the victim and told her she would be taken from her mother if she told anyone. *The threats were made while the subjects were holding the knife and fork, which could be perceived as deadly weapons.*

Direct Appeal App. p. 23 (emphasis added).

7

During the hearing on Craig's petition for post-conviction relief, Craig's trial counsel, Zaki Ali, testified that he did not realize that the wording of the statute defining the offense differed from the language used in the charging information. He further stated that his failure to challenge the defect was not part of a strategic decision. On cross examination, however, he testified as follows with respect to the factual basis that the knife and fork were drawn or used:

> I want to go back to your question earlier, if I may, and mention that, is there a difference between draws and uses? Yes. Um, draw would mean to flash, to show, to demonstrate. To use would actually, to put to use. In this case, um, it wasn't drawn, it was actually used. The utensils. . . . I think they were shown and they were probably flashed.

Tr. p. 12. Thus, despite the defect, even Craig's trial counsel appeared to agree that the facts of the case fit within the statutory definition of the offense.

In an opinion on rehearing in *Hall v. State*, 837 N.E.2d 159 (Ind. Ct. App. 2005), a panel of this Court found that there was sufficient evidence to support a conviction for intimidation as a Class C felony where the issue involved whether the defendant was in actual possession of a weapon at the time the threat was communicated. We relied on our Supreme Court's opinion in *Davis v. State*, 477 N.E.2d 889 (Ind. 1985), analyzing the use of the term "while" in the context of a murder eligible for the death penalty because it was committed while committing the underlying felony of child molesting. We set forth the following analysis from *Davis*:

> Although we have not previously considered [the word "while"] as it is used in the death penalty statute, we have repeatedly found that the phrase "while committing" denotes a continuing chain of events under our felony-murder statute. In other words, when there is a *close proximity in terms of time and distance* between the underlying felony and the homicide and there is no

8

break in the chain of events from the inception of the felony to the time of the homicide, we treat the two events as part of one continuous transaction.

*Hall*, 837 N.E.2d at 160 (quoting *Davis*, 477 N.E.2d at 894).

Here, the factual basis clearly establishes the proximity in time and distance between the child molesting and confinement involving the use of the knife and the fork and the threat to put her on a large grill and feed her to a large dog at her home if she told anyone about the incident. The probable cause affidavit supports a finding that the knife and fork were in hand at the time the threat was made. Nonetheless, it is clear that they were used at least immediately prior to the making of the threatening statements. Although the threat did not specifically refer to the knife and the fork, their presence and prior use would at the least make F.N. think that they would be used again. We cannot say that Craig has met his burden of showing that the evidence is without conflict and leads to but one conclusion, and the post-conviction court reached the opposite conclusion. The factual basis is adequate to support the conviction despite the defect in the charging information.

## II. GUILTY PLEA

Craig also argues that his guilty plea was not knowingly, intelligently, and voluntarily made because he was misled by the State about the nature of the intimidation charge. He claims that the language in the charging information did not specifically advise him that a deadly weapon had to be drawn or used in order to enhance the offense to a Class C felony.

Indiana Code section 35-35-1-2(a)(1) (2003) provides that a trial court "shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first

9

determining that the defendant understands the nature of the charge against him." A guilty plea is not "voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S. Ct. 2253, 2257-58, 49 L. Ed. 2d 108 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L. Ed. 859 (1941)). Our Supreme Court has held that unless an element of the offense is a critical element of the offense, such as specific intent to kill is to the offense of attempted murder, notice of the elements of the offense is not required in order to satisfy *Henderson's* requirement of notice of the true nature of the charge. *Patton v. State*, 810 N.E.2d 690, 697 (Ind. 2004). What is required under *Henderson* is that (1) a defendant have real notice of the true nature of the charge to which he pleads guilty, (2) the record of the guilty plea hearing contains an explanation of the charge by the trial court or a representation by trial counsel that the nature of the offense has been explained to the defendant, or absent an explanation a presumption that trial counsel routinely explains the nature of the offense sufficiently to give notice to the accused, (3) where intent is a critical element of the offense, notice of the element is required, and (4) even where required notice has not been given nor can it be presumed, that lack of notice is subject to analysis for harmless error. *Id*. at 696.

Unlike specific intent in the context of attempted murder charges, the difference between committing an offense while armed with a deadly weapon and while drawing or using that deadly weapon is not so significant as to be a critical element of the offense. The

trial court read the charging information and confirmed that Craig understood the charge.

The trial court further advised Craig as follows:

> So in order to be guilty of [intimidation] the State would have to prove on or about March the 8th you had done these things to little [F.N.] and you told her if she told anybody you were gonna hurt her or something like that. Do you understand . . . and plus you had this knife and fork or I don't know which one you had. Maybe it's both. Maybe it's one or the other. Do you understand what I'm telling you?

Direct Appeal Tr. pp. 8-9. Craig responded that he understood. During the hearing on Craig's petition, Ali testified that in addition to the factual basis set forth by the State, Ali and Craig went through the facts of the case and reviewed the discovery provided by the State indicating what evidence supported the charges. Craig has not met his burden of establishing that the post-conviction court erred by concluding that Craig's guilty plea was entered into knowingly, intelligently, and voluntarily.

## II.    INEFFECTIVE ASSISTANCE

Craig raises a claim of ineffective assistance of counsel, arguing that his trial counsel's failure to advise him of the defective wording of the intimidation charge prejudiced him.

> When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438, 137 L. Ed. 2d 545 (1997). As a result, most ineffective assistance claims can be resolved by a prejudice inquiry alone. *Williams v. State*, 706 N.E.2d 149, 154 (Ind. 1999), *reh'g denied*, *cert. denied*, 529 U.S. 1113, 120 S. Ct. 1970, 146 L. Ed. 2d 800 (2000). Moreover, if a petitioner is convicted pursuant to a guilty plea, and later claims that his counsel rendered ineffective assistance because

counsel overlooked or impaired a defense, the petitioner must show that a defense was indeed overlooked or impaired and that the defense would have likely changed the outcome of the proceeding. *Segura v. State*, 749 N.E.2d 496, 499 (Ind. 2001).

*Richardson v. State*, 800 N.E.2d 639, 646 (Ind. Ct. App. 2003), *trans. denied*.

Here, Craig's argument is not that he would have insisted on proceeding to trial on the intimidation charge had he known about the defect. Rather, he argues that had his counsel advised him of the defective wording of the charge, he could only have been convicted of intimidation as a Class D felony. We disagree.

We have already concluded that the factual basis for intimidation as a Class C felony was adequate to support Craig's guilty plea. Therefore, Craig cannot establish prejudice from his trial counsel's failure to notice the defect and advise him. Furthermore, if Craig's trial counsel noticed the defect and brought that to the attention of the State or the trial court, there is every reason to believe that the State would have corrected the information to comport with the statutory language. Craig has not established that the post-conviction court erred by finding and concluding that Craig was not prejudiced by his trial counsel's representation.

## CONCLUSION

In light of the above, we affirm the post-conviction court's decision.

Affirmed.

RILEY, J., and BARNES, J., concur.

12