William J. SPRANGER, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 89S00–9008–PD–540.

Supreme Court of Indiana.

May 22, 1995.

As Corrected May 24, 1995.

Susan K. Carpenter, Public Defender, John Pinnow, Sp. Asst., Joseph M. Cleary, J. Jeffreys Merryman, Jr., Deputy Public Defenders, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

DICKSON, Justice.

This appeal is from a judgment granting and denying post-conviction relief. The defendant, William J. Spranger, was convicted of the murder of a law enforcement officer and sentenced to death. We affirmed on direct appeal. *Spranger v. State* (1986), Ind., 498 N.E.2d 931, *reh'g denied*, Ind., 500 N.E.2d 1170, *cert. denied* (1987), 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536. The defendant then sought post-conviction relief. After proceedings including an evidentiary hearing, the post-conviction court denied the defendant's request to vacate the murder conviction, but the court set aside the death sentence, with new sentencing proceedings to follow the conclusion of this appeal. Both the defendant and the State now appeal: the defendant appeals the post-conviction court's refusal to vacate his conviction, and the State appeals the order setting aside the death sentence.

Indiana Post–Conviction Rule 1(7) authorizes an appeal to be taken by either the defendant-petitioner or the State. However, the applicable standard of review is not identical for both parties. While both are governed by Indiana Trial Rule 52(A), Indiana courts have historically articulated a distinctly formulated standard for appeals from negative judgments. *See State v. Clanton* (1982), Ind.App., 443 N.E.2d 1204, 1205. In this post-conviction proceeding, the defendant-petitioner had the burden of establishing his grounds for relief. Ind.Post–Conviction Relief Rule 1(5). Therefore, to the extent that he is now appealing from a denial of relief, he is appealing from a negative judgment. In contrast, in the State's appeal, it claims that the post-conviction court erred in concluding that the defendant established one of his claims sufficiently to be entitled to relief. Thus the judgment from which the State appeals is not a negative judgment.

When an appeal after a non-jury trial is *not* challenging a negative judgment, the applicable standard is simply that prescribed by Indiana Trial Rule 52(A):

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

This "clearly erroneous" standard is a review for sufficiency of evidence. *Estate of Reasor v. Putnam County* (1994), Ind., 635 N.E.2d 153, 158. In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id.; Chidester v. City of Hobart* (1994), Ind., 631 N.E.2d 908, 910; *Indianapolis Convention and Visitors Ass'n., Inc. v. Indianapolis Newspapers, Inc.* (1991), Ind., 577 N.E.2d 208, 211. We reverse only upon a showing of "clear error"—that which leaves us with a definite and firm conviction that a mistake has been made. *Egly v. Blackford County Dep't of Pub. Welfare* (1992), Ind., 592 N.E.2d 1232, 1235.

However, when the appeal is from a negative judgment, the standard of review is phrased differently. The appellate tribunal must be convinced that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court. *Williams v. State* (1987), Ind., 508 N.E.2d 1264, 1265; *Lowe v. State* (1983), Ind., 455 N.E.2d 1126, 1128.

> On appeal [from the denial of post-conviction relief], petitioner stands in the position of one appealing from a negative judg-

ment. In such cases, it is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law.

*Fleenor v. State* (1993), Ind., 622 N.E.2d 140, 142, *cert. denied* (1994), —— U.S. ——, 115 S.Ct. 507, 130 L.Ed.2d 415.

Employing differing formulations, each of these two standards of review directs the way appellate tribunals are to look at trial court decisions. In one, the inquiry is essentially whether there is *any* way the trial court could have reached its decision. In the other, it is whether there is *no* way the court could have reached its decision. Arguably, this is a distinction without a difference.[1] However, since neither party to this appeal urges that we reconsider existing law or consolidate these two standards, we will separately apply each, consistent with precedent.

### *The Defendant's Appeal*

The defendant contends that the post-conviction court erred in its denial of his claims of ineffective assistance of counsel before trial, during the trial's guilt phase, and in his direct appeal.[2] The defendant identifies the following areas of ineffective assistance of counsel during the investigation and the trial's guilt phase: (a) tardy retention of investigators, (b) untimely appointment of co-counsel, (c) erroneous choice of defense theory, (d) failure to object to prosecutorial misconduct and instructions, and (e) conflict of interest. He asserts that these claims are not barred by *res judicata* because they are based on facts outside the direct appeal record and were unavailable for direct appellate review. He contends they were not waived

on direct appeal because one of his trial counsel also represented him as appellate counsel. With respect to his direct appeal, the defendant alleges the following additional instances of ineffective assistance of counsel: (f) failure to support the Motion to Correct Errors, (g) failure to claim prosecutorial misconduct as fundamental error, and (h) failure to claim fundamental error regarding erroneous instructions.

In its Findings of Fact and Conclusions of Law, the post-conviction court disposed of the defendant's claims (other than those relating to the penalty phase) upon alternative grounds. Not only did it find all such issues barred by *res judicata* and waiver, but it also found on the merits that these claims "are not supported by the evidence"; that the defendant "received a vigorous and competent defense at trial during the guilt phase"; and that, on appeal, "counsel did not fail to raise any appropriate issues." Record at 448.

■ We agree with the defendant that *res judicata* is not generally applicable here to bar all of the defendant's claims of ineffective assistance of counsel. On direct appeal, we rejected the defendant's claim that the trial court's refusal of his requests for continuances operated to deny him effective assistance of counsel, noting that "our review of the record fails to disclose any abuse of discretion or resulting inadequacy of representation." *Spranger*, 498 N.E.2d at 934. In concluding observations regarding the propriety of the conviction and death sentence, we generally noted that the defendant was "provided with a vigorous defense." *Id.* at 949. We now recognize, however, that the defendant's direct appeal did not present, nor did our opinion intend to address, any claim

---

1. This distinction has been questioned. Professor Stroud suggests that "the burden imposed upon either losing party on appeal in order to realize reversal, and the standards by which the judgment will be evaluated, are in the final analysis, functionally indistinguishable" and that "there is no apparent reason to conceive of a negative judgment review in terms different than sufficiency review." Kenneth M. Stroud, 4A *Indiana Practice*, § 12.7 at 144 (1990). He observes that the difference is one of degree and that "[p]erhaps Indiana appellate courts will tolerate a less plausible or rational inference when reviewing negative judgments than when reviewing a sufficiency of evidence claim." 4A *id.*

2. The defendant does not contend that Article I, § 13, of the Indiana Constitution affords protection beyond the sixth and fourteenth amendments to the United States Constitution. This failure to present legal analysis to support a claimed violation of the Indiana Constitution constitutes waiver of such an argument. *Bivins v. State* (1994), Ind., 642 N.E.2d 928, 936 n. 1.

of defense counsel deficiency as constituting constitutionally ineffective assistance of counsel.

■■ The defendant is likewise correct in arguing that the failure to raise trial counsel ineffectiveness in his direct appeal does not constitute a waiver of this issue. Ordinarily, the failure to raise this issue in a direct appeal will constitute a waiver resulting in procedural default. *Hollonquest v. State* (1982), Ind., 432 N.E.2d 37, 39. The remedy of post-conviction relief is not a substitute for a direct appeal. Ind.Post–Conviction Rule 1(1)(b). However, when the same attorney represents a defendant both at trial and on appeal and does not raise on appeal the issue of trial counsel ineffectiveness, we have been reluctant to apply waiver "and thus forever foreclose appellant from raising the question of the competency of his trial counsel." *Majors v. State* (1982), Ind., 441 N.E.2d 1375, 1376. *See also Askew v. State* (1986), Ind., 500 N.E.2d 1219, 1220. Attorney Robert Way was appointed to represent the defendant following his arrest in June, 1983, and continued to do so through the trial, which began October 31, 1983. Three weeks before trial began, the trial court appointed attorney Terry Richmond as co-counsel. Richmond actively participated in the guilt phase of the trial, questioning most of the witnesses and making most of the objections. Pursuant to an appointment by the trial court, Richmond represented the defendant on direct appeal. Under these circumstances, we choose to address the claim of trial counsel ineffectiveness rather than to find procedural default due to waiver.

■ The defendant acknowledges that the claim of ineffective assistance of counsel is governed by *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. As largely recognized by previous opinions of this Court,[3] *Strickland* embodies the following principles. Reversal for ineffective assistance of counsel may be appropriate in cases where a defendant shows both (a) that counsel's performance failed to meet an objective standard of reasonableness as measured by predominate professional norms, and (b) that such deficient performance so prejudiced the defendant as to deprive him of a fair trial. It shall be strongly presumed that counsel assisted the defendant adequately and exercised reasonable professional judgment in making all significant decisions. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Inexperience or isolated instances of poor tactics or strategy do not necessarily amount to ineffectiveness of counsel. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123. To prove resulting prejudice amounting to the deprivation of a fair trial, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result would have been different. Where, as here, the claim of ineffective assistance of counsel is asserted in a post-conviction relief proceeding, the foregoing discussion represents the defendant's burden of proof and the standard of review to be applied in the post-conviction court.

In the appellate review of a post-conviction court's negative judgment denying relief sought by a defendant, our role is to determine whether the undisputed evidence, subject to the post-conviction court's opportunity to judge credibility, unerringly and unmistakably leads us to an opposite conclusion. We must decide if such evidence compels us to conclude with certainty both that defense counsel's performance fell below an objective standard of reasonableness and that counsel's unprofessional errors deprived the defendant of a fair trial.

■ The defendant's first claim of ineffective assistance of counsel is based upon his allegation that his counsel failed to make a timely request for the assistance of an investigator. The defendant's first attorney, Robert Way, did not have an investigator. No investigator was obtained until co-counsel Terry Richmond was appointed. As a result, the defendant argues, his defense attorneys did not timely learn of a key witness's vulnerability to impeachment, were precluded from properly assessing the legal and factual

---

**3.** *See Smith v. State* (1987), Ind., 511 N.E.2d 1042, 1043; *Chupp v. State* (1987), Ind., 509 N.E.2d 835, 838; *Burr v. State* (1986), Ind., 492 N.E.2d 306, 307–08.

strength of the State's case, and formulated unwise strategy. The defendant contends that, had a more complete investigation been conducted, he would have admitted the shooting but claimed sudden heat and thereby possibly have received a conviction of voluntary manslaughter instead of murder, thus foreclosing the possibility of a death sentence and resulting in a sentence of a lesser term of years.

■ At the post-conviction hearing, an expert witness provided opinion testimony that neither Richmond nor Way spent sufficient time in investigation to meet minimal requirements in a capital case. However, the post-conviction court was not bound to give this opinion conclusive credibility or weight but was to consider the extent of investigation by both defense attorneys during the entire period of representation. The claim that the investigation might have uncovered additional information does not by itself determine whether he received ineffective assistance of counsel warranting reversal. As noted above in our discussion of *Strickland,* the defendant must not only prove that counsel was deficient but also that the deficient performance resulted in prejudice depriving him of a fair trial. Such prejudice cannot result, however, if the defendant could not have succeeded in such a voluntary manslaughter strategy. It is correct that even when the State has proven the elements of murder, a defendant may be convicted of the lesser charge of voluntary manslaughter if the defendant can show "sudden heat." *See* Ind.Code § 35–42–1–3; *Finch v. State* (1987), 510 N.E.2d 673, 675. However, in order to show sudden heat, the defendant must demonstrate that he was provoked and that the provocation would have produced in an ordinary person such passion as to cause him or her to kill without the intent to do so. *Id.* The defendant alleges that under *Roark v. State* (1991), Ind., 573 N.E.2d 881, and *Mills v. State* (1986), Ind., 498 N.E.2d 1236, he could show sudden heat and obtain a manslaughter conviction. This Court has held that evidence of sudden heat justifies an instruction on voluntary manslaughter. *See Roark,* 573 N.E.2d at 882; *Underwood v. State* (1989), Ind., 535 N.E.2d 118, 120; *Finch v. State* (1987), Ind., 510 N.E.2d 673,

675. However, such sudden heat must be in response to "sufficient provocation to induce passion that renders the reasonable person incapable of cool reflection." *Roark,* 573 N.E.2d at 882. On the night in question, the marshal was driving his police cruiser and was in uniform when he came upon the defendant and his cohort committing a crime. Sister jurisdictions have held that a lawful arrest cannot provide sufficient provocation to reduce murder to manslaughter. *See Murray v. State* (1946), 201 Ga. 201, 203, 39 S.E.2d 842, 850; *State v. Madden* (1972), 61 N.J. 377, 385, 294 A.2d 609, 613; *State v. Linder* (1981), 276 S.C. 304, 306, 278 S.E.2d 335, 337. Because citizens have a duty to submit to a lawful arrest by a law enforcement officer, such an arrest will not be recognized as legally adequate to provoke the passions of an ordinary person to sudden heat so as to justify a conviction for the lesser offense of manslaughter.

■ The defendant also claims ineffective assistance of counsel on grounds that the defendant had only one attorney for four months and that a second attorney was not requested until less than two months before trial and not appointed until less than one month before trial. We understand his claim to be two-fold: that attorney Way unreasonably delayed seeking or insisting upon co-counsel and that there was a systemic deficiency resulting from political and monetary circumstances of the initial venue county. The defendant contends that the untimely appointment of co-counsel resulted in a belated and prejudicial change in the defense strategy. In assessing this claim, a post-conviction court properly considers the totality of the assistance of counsel provided at trial to determine whether the assistance fell below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693–94.

■ Both aspects of this claim substantially rest upon the premise that the defendant was entitled to two defense attorneys. Effective commencing January 1, 1992, Indiana Criminal Rule 24(B) requires the appointment of two qualified attorneys to represent an individual in a trial proceeding

where a death sentence is sought. This procedural requirement is prospective only, and the defendant does not contend that the rule applies retroactively to his 1983 trial. Constitutional considerations do not necessarily require the appointment of two defense attorneys in death penalty cases. *See Marshall v. State* (1993), Ind., 621 N.E.2d 308, 321; *Bellmore*, 602 N.E.2d at 123–24. The defendant's claim of untimely appointment of co-counsel is also challenged by the prejudice prong of *Strickland.* He claims resulting prejudice because an earlier appointment would have led his attorneys to develop and select the voluntary manslaughter defense strategy. This claim lacks merit because as noted above, the defendant could not, as a matter of law, have been properly convicted of manslaughter.

■ The defendant also asserts ineffective assistance of counsel because his trial counsel changed its theory of defense just prior to trial. The case was tried on the theory that a co-defendant fired the shot that killed the victim while the two were fighting. Prior to the appointment of attorney Richmond, the defense had pursued a strategy of not denying the crime but attempting to maximize mitigators. The defendant claims that his trial counsel were ineffective because they failed to use the viable alternative defense of admitting the shooting and presenting the evidence of sudden heat, thereby inviting a voluntary manslaughter conviction with its attendant lesser penalty.

With respect to this claim, the post-conviction court made specific findings:

For four months Robert Way had been contemplating and developing a defense strategy that did not dispute that the petitioner shot and killed Marshal Miner. The petitioner had never denied to the police that he shot the Marshal. He admitted the shooting to his family almost immediately after the event. He also admitted it to his fellow inmates.

Less than three weeks before trial and only days after the appointment of co-

counsel, a dramatic change occurred in the theory of the defense. It was disclosed that the defense no longer conceded that the petitioner shot the Marshal. The defense's new theory was that it was the co-defendant Allen Snyder and not the petitioner who shot the Marshal.

At trial, the State presented a strong case, supported by the defendant's numerous admissions, the testimony of co-defendant Allen Snyder and eyewitnesses and ballistic and pathology evidence. After one hour of deliberation, the jury returned a verdict of guilty of murder.

There is no basis to conclude that the defense strategy contemplated by Robert Way prior to Terry Richmond's entry into the case would have avoided that verdict.

Record at 449. Notwithstanding these findings with respect to the change in defense strategy, the post-conviction court found that the defendant-petitioner "received a vigorous and competent defense at trial during the guilt phase."[4] Record at 448. In its review of a claim of erroneous strategy, a post-conviction court reviews the totality of counsel's performance in light of prevailing norms and the presumption of adequate assistance. *See Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. In addition, the defendant's claim fails because, as previously noted, his arrest cannot be sufficient provocation to establish the sudden heat element needed for the voluntary manslaughter defense strategy he now advocates.

■ The defendant further asserts ineffectiveness of his trial counsel for their lack of objection to two instances of alleged prosecutorial misconduct at trial. He first contends that the State failed to disclose credibility information regarding a principal defense witness. We decline to find prosecutorial misconduct in the failure to inform the defense of information known by the State regarding the credibility of the defendant's own witness. The defendant next contends that his trial counsel failed to object to comments made by the State during closing ar-

---

4. We note, however, that the court observed the abandoned strategy would have significantly affected the *penalty* phase. This was a major factor cited by the post-conviction court in its deci-

sion to set aside the death sentence and order further sentencing proceedings. *See* Record at 449.

gument, including personally vouching for the credibility of State witnesses, improperly commenting on the defendant's alleged suicide attempt as probative of guilt, and referring to Snyder's plea agreement provision that he testify truthfully. The post-conviction court expressly addressed this claim, finding that "[t]he contention that the petitioner was prejudiced by improper prosecutorial comments, arguments and conduct has not been proven." Record at 448. The defendant needed to meet both *Strickland* prongs, deficient performance by counsel and resulting prejudice. We need not determine whether deficient performance was necessarily proven because the defendant's evidence in support of the second prong is insufficient to compel a decision opposite that reached by the post-conviction court. Considering the strength of numerous confessions and the other evidence in contrast to the probable effect of trial counsel's alleged failures to object, we are not persuaded that the post-conviction evidence leads unerringly to a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

 The defendant also alleges ineffective assistance of counsel arising from his trial attorney's failure to object to instructions that referred to the jury's role as deciding "guilt or innocence" and to its role in determining the law and the facts. The post-conviction court concluded that there was no error, finding that the trial court's instructions "individually and as a whole correctly stated the applicable law." Record at 447. Analogous claims of instruction error have been reviewed and rejected by this Court. *Daniel v. State* (1991), Ind., 582 N.E.2d 364, *cert. denied* (1992), —— U.S. ——, 113 S.Ct. 116, 121 L.Ed.2d 72; *Fleenor v. State*, Ind., 514 N.E.2d 80, 87, *cert. denied* (1987), 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158. The post-conviction court did not err on this issue.

 The defendant further asserts ineffective assistance of counsel on grounds that defense attorney Way had an actual conflict of interest. As a Public Defender for Noble County, Way had previously represented Ron Terrill, Steve Campbell, and John Skinner. After he was appointed to represent the defendant, the cases of Terrill, Campbell, and Skinner were transferred to Dennis Graft, the other Noble County Public Defender.

At Spranger's trial, both Terrill and Campbell testified for the State that the defendant admitted to them, while all were incarcerated at the county jail, that he had shot the marshal. Both were cross-examined by defense co-counsel Richmond. Way testified at the post-conviction hearing that he had discussed the Spranger case with Graft but was careful to avoid a conflict or impropriety.

 The defendant argues that, because the co-counsel, Richmond, cross-examined a former client of Way's, and because impeachment may have been restrained due to these witnesses' representation by a lawyer who served with Way as the other County Public Defender and who shared office space with him, the circumstances of this case were analogous to improper multiple representation. To prevail in this claim of conflict of interest, the defendant must demonstrate to the post-conviction court that trial counsel had an *actual* conflict of interest and that the conflict adversely affected counsel's performance. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 347 (emphasis added). Way's two former clients were each cross-examined by co-counsel Richmond, and the defendant does not direct us to persuasive evidence indicating that these cross-examinations were deficient.

With regard to each of the foregoing claims of ineffective assistance of counsel during the investigation and the guilt phase of the trial, we have considered the evidence that is favorable to judgment and any undisputed evidence. As to each such claim, we are not convinced that the post-conviction court erred in ruling against the defendant. Such evidence does not demonstrate unerringly and unmistakably that the post-conviction court erred in finding these claims not proven.

As to the representation provided by his appellate counsel, the defendant asserts ineffective assistance of counsel, citing three instances of counsel's deficient performance. The first claim is that appellate counsel failed to attach affidavits or other evidence to the Motion to Correct Errors, which included a specification of error in denying continuance motions. The defendant claims that this omission was substandard and prejudicial because on direct appeal, this Court found nothing in the record to disclose any "resulting inadequacy of representation." *Spranger*, 498 N.E.2d at 934. The defendant argues that the denial of a continuance resulted in a lack of preparation, claiming the same prejudice asserted in his claims of ineffective counsel during the investigation and the trial's guilt phase. As we have already discussed in response to those claims, conclusive evidence of resulting prejudice is lacking, and thus no error by the post-conviction court has been demonstrated.

The defendant next alleges appellate counsel ineffectiveness for failing to raise and argue that allegations of prosecutorial misconduct amounted to fundamental error. Citing the post-conviction court's finding that "[t]he contention that the petitioner was prejudiced by improper prosecutorial comments, arguments and conduct has not been proven," Record at 448, the defendant argues that this amounts to a concession by the post-conviction court that misconduct had occurred. It does not. We previously noted that the evidence before the post-conviction court does not clearly establish prejudicial prosecutorial misconduct.

Just as the defendant complains of his trial counsel's failure to object to certain instructions, he claims ineffective assistance of appellate counsel for failure to raise claims of fundamental error regarding the same instructions. As we previously determined, there was no error in the post-conviction court's finding that trial counsel was not ineffective for failing to object to these instructions.

In representing the defendant in the direct appeal, his appellate counsel submitted an appellant's brief of 150 pages plus appellant's reply brief of forty pages raising fourteen issues, nine of which related to the guilt phase of the trial and each of which was supported by comprehensive discussion and argument. Considering only the evidence supporting the post-conviction court's judgment and any undisputed evidence, we are not unerringly and unmistakably led to conclude that appellate counsel's performance fell below an objective standard of reasonableness and thereby deprived the defendant of a fair appeal. The post-conviction court did not err in finding the defendant's claim of ineffective assistance of appellate counsel to be "not supported by the evidence." Record at 448.

### The State's Appeal

The State contends that the post-conviction court erred in finding a failure of effective assistance of counsel at the penalty phase and argues that mitigating circumstances were properly considered. The State seeks reinstatement of the death penalty. The State presents examples of defense counsel's advance investigation and preparation; presentation of witnesses; and evidence of medical circumstances, family background, and personal history. However, the post-conviction court's decision to vacate the death sentence was supported by various findings, including, inter alia, the following:

> There is no basis to conclude that the defense strategy contemplated by Robert Way prior to Terry Richmond's entry into the case would have avoided [the guilty] verdict. In the avoidance of the death sentence, however, the abandoned strategy had several major advantages. That defense encompassed issues of insanity, intoxication and accident. Instead of trying a sullen, unrepentant defendant stonewalling in the face of convincing evidence of guilt, the jury and Court would have before them a young man of limited mental ability with no history of violence or criminal conduct, who had been drinking heavily before the shooting and who never denied that he shot the marshal but only denied that the killing was intentional. It was a defense that conceded a likely conviction but maximized the development of mitigation.

The eleventh hour change in the defense's guilt phase strategy necessitated a different approach to presentation of mitigation and the development of additional factors to compensate for those eliminated by the new defense.

During the penalty determination, the defense's presentation fell below the prevailing norms of reasonably competent counsel. It was devoid of any significant evidence of the defendant's psychological make-up including intelligence, intellectual deficits, learning disability, impulsivity, immaturity, family and social history, academic records, the effect of alcohol and the ability to make appropriate decisions in rapidly changing circumstances. Such information was presented at the hearing on post conviction relief and could have been presented at trial with a reasonable opportunity for its development.

Even without this information, the jury deliberated for seven hours before recommending the death penalty. This recommendation was subsequently accorded great weight by the Court in its sentencing decision.

There is a reasonable probability that the jury would not have reached unanimity in the recommendation of the death penalty had petitioner been effectively represented at the penalty stage. There is a reasonable probability that the Court would not have imposed the death penalty had the jury not recommended it.

This Court's need of more information about the petitioner is reflected in its depreciation of the mitigating factors of the petitioner's youth and lack of any history of criminal or violent activity and other possible mitigation.

. . . .

This Court also summarily depreciated youth as a mitigator, concluding that for one so young to commit such a crime would appear to be more of a reflection of deficient character than a misjudgment of youth. The petitioner was entitled to a presentation that would support a more expansive consideration of the mitigating nature of youth. In addition to the proclivity for misjudgments, impulsivity, igno-

rance, undeveloped values, insecurity, impatience, irrationality, inexperience, alcohol intolerance, susceptibility to influence, potential for rehabilitation and other possible characteristics of the young deserved more attention.

Record at 449–50.

Our appellate review of the State's claim is governed by the "clearly erroneous" standard of Trial Rule 52(A), as previously discussed. In considering the totality of the evidence that supports the judgment and the reasonable inferences to be drawn therefrom, we are not left with a definite and firm conviction of clear error by the post-conviction court.

*Conclusion*

The judgment of the post-conviction trial court is affirmed. This cause is remanded to the post-conviction court for penalty phase retrial or other further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, SULLIVAN, and SELBY, JJ., concur.