**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 11 2014, 10:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN PINNOW**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GREGORY K. COX,           )
                          )
    Appellant-Petitioner,  )
                          )
        vs.     )     No. 53A05-1308-PC-376
                          )
STATE OF INDIANA,         )
                          )
    Appellee-Respondent.   )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Teresa D. Harper, Judge
Cause No. 53C09-1103-PC-443

**March 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Gregory K. Cox appeals the denial of his petition for post-conviction relief from his convictions following a plea of guilty to two counts of attempted murder,[1] each as a Class A felony, raising the following reordered issues:

I.      Whether Cox's guilty plea was knowing, intelligent, and voluntary; and

II.     Whether there was a sufficient factual basis on the element of intent for Cox's guilty plea to two counts of attempted murder.

We affirm.[2]

## FACTS AND PROCEDURAL HISTORY[3]

On September 23, 2000, Cox was smoking crack cocaine with acquaintances Randy Osmer, Karin Coonce, Sherry King, and James Andrew Crouch,[4] in a bedroom of a Bloomington, Indiana apartment. Around 10:00 a.m., Osmer took a rock of crack cocaine from Cox, and the two began to argue. The argument escalated, and Osmer cut Cox's finger with a knife. As Cox took the knife away from Osmer, Osmer pulled out a .32 caliber revolver. Cox grabbed Osmer's revolver and shot Osmer, Crouch, King, and Coonce, who was pregnant. Cox then left the apartment. Cox later admitted that Coonce

---

[1] *See* Ind. Code §§ 35-42-1-1, 35-41-5-1.

[2] We commend the post-conviction court for the thoroughness of its entry, which has greatly facilitated appellate review.

[3] Consistent with the parties' submissions on appeal, our recitation of the facts is based on the transcripts of the guilty plea hearing, the sentencing hearing, and the post-conviction hearing, and is based on the pre-sentence investigation report, which was admitted at the post-conviction hearing as Petitioner's Exhibit E. *Appellant's Br.* at 3, *Appellee's Br.* at 4.

[4] The names Osmer and Coonce are spelled differently in various part of the records; Cox's PSI and charging information refer to them as Osmer and Coonce, *Pet'r's Exs.* C & E, while the transcript of the guilty plea hearing uses the spelling Osborne and Koontz. *Pet'r's Ex.* A. For consistency, we use the spelling from the PSI and Cox's charging information.

2

was sitting on the bed when he shot her, and that Crouch "was over on the floor on the other end of the bed" when Cox shot him. *Pet'r's Ex*. A at 18.

Officers were dispatched to investigate the shooting. King was pronounced dead at the scene, and the other three were taken to a Bloomington hospital. Crouch and Osmer, who were both shot in the back, recovered from their injuries, as did Coonce who was shot once in the stomach and once in the leg.

On September 28, 2000, the State filed an information charging Cox with five counts: Count I, the murder of King; Count II, the attempted murder of Crouch; Count III, the attempted murder of Osmer; Count IV, the attempted murder of Coonce; and Count V, dealing in more than three grams of cocaine. Counts II through V were all Class A felonies. On November 30, 2000, Cox, who was represented by counsel, pleaded guilty pursuant to a written plea agreement to Counts II and IV. In exchange for his plea, the State dismissed the remaining three counts. On January 5, 2001, the trial court sentenced Cox in accordance with the terms of the plea agreement to thirty-five years executed for Count II and forty years for Count IV, of which fifteen years were suspended. The sentences were to be served consecutively, for an aggregate sentence of sixty years.

Cox filed his *pro se* petition for post-conviction relief on March 16, 2011, and the State filed its answer. *Appellant's App*. at 6-9, 12. About a year later, on February 15, 2012, Cox, now represented by counsel, filed an amended petition contending that: (1) Cox's plea was not knowing, intelligent, and voluntary, in part because he did not know that intent to kill was an element of the charges against him; and (2) there was an insufficient factual basis for Cox's plea of guilty to two counts of attempted murder

3

because he did not admit that he had the intent to kill. The post-conviction court conducted an evidentiary hearing on the petition on August 9, 2012, during which Cox was the only person to testify. The post-conviction court denied the petition on July 8, 2013, concluding that: (1) Cox did not overcome the presumption that trial counsel explained the nature and substance of the charges against him; and (2) there were sufficient facts "to demonstrate [Cox] had a specific intent to kill the two victims," and error, if any, was harmless. *Id.* at 87. Cox now appeals. Additional facts will be added where needed.

## DISCUSSION AND DECISION

Under the rules of post-conviction relief, a petitioner must establish the grounds for relief by a preponderance of the evidence. *Oliver v. State*, 843 N.E.2d 581, 586 (Ind. Ct. App. 2006) (citing *See* Ind. Post-Conviction Rule 1(5)), *trans. denied*. When a petitioner appeals the denial of his petition for post-conviction relief, he is appealing a negative judgment. *Id.* Therefore, to prevail on appeal, Cox must demonstrate that the evidence presented in the post-conviction proceeding leads unmistakably only to a conclusion opposite that reached by the post-conviction court. *Id.* (citing *Lindsey v. State,* 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied).* The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Id.*

## I. Voluntariness of the Plea

Cox asserts that his guilty plea was not knowing, intelligent, and voluntary. "A petitioner claiming that his or her guilty plea was involuntary, and appealing from a denial of post-conviction relief, must show the reviewing court 'that the evidence presented during the post-conviction proceedings is without conflict and, as a whole, leads unerringly

4

and unmistakably to a decision opposite that reached by the post-conviction court.'" *Ellis v. State*, 744 N.E.2d 425, 427 (Ind. 2001) (quoting *Curry v. State,* 674 N.E.2d 160, 161 (Ind. 1996) (citing *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995))).

"The long-standing test for the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In assessing the voluntariness of the plea, an appellate court "reviews all the evidence before the post-conviction court, 'including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are part of the record.'" *Diaz*, 934 N.E.2d at 1094 (quoting *State v. Moore,* 678 N.E.2d 1258, 1266 (Ind. 1997)).

Citing to the United States Supreme Court's reasoning in *Henderson v. Morgan,* 426 U.S. 637, 645-47 (1976), Cox contends that his plea of guilty was not knowing, intelligent, and voluntary "because he was not fully advised of and [was] not aware of the nature of the charges to which he was pleading guilty." *Appellant's Br*. at 16. A guilty plea is not "voluntary in the sense that it constitute[s] an intelligent admission that [a defendant] committed the offense unless the defendant received '*real notice* of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson*, 426 U.S. at 645 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)) (emphasis added).

In *Henderson*, the defendant was indicted for first degree murder; however, by agreement with the prosecution and on counsel's advice, he pleaded guilty to second-

5

degree murder in 1965. *Id*. at 638. Five years later, Henderson, unsuccessfully, sought to vacate his guilty plea on the grounds that it was involuntary. After exhausting his state remedies, the defendant filed a petition for a writ of habeas corpus claiming that his guilty plea was involuntary because he was not aware that intent to cause the death of the victim was an element of the offense. *Henderson*, 426 U.S. at 638-39. The Federal District Court denied relief on the basis of the state-court record; however, the Court of Appeals for the Second Circuit reversed and remanded the case, instructing the District Court to conduct an evidentiary hearing on the issue of whether the defendant was aware that "intent was an essential element of the crime." *Id*. at 639.

During the evidentiary hearing, testimony was heard from Henderson, his mother, the two attorneys who had represented Henderson in 1965, and the prosecutor. The District Court specifically found that Henderson "'was not advised by counsel or [the] court, at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree.'" *Id*. at 640. On the basis of this finding, the District Court held "as a matter of law" that the plea was involuntary and had to be set aside." *Id*. The Second Circuit affirmed without opinion. *Id*. at 641. On appeal, the United States Supreme Court reiterated the presumption that, even without defense counsel's representation that the nature of the offense was explained to the accused, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id*. at 647. However, recognizing the unique nature of the District Court's specific

6

finding that "the element of intent was not explained to [Henderson]," the Supreme Court affirmed the grant of Henderson's petition for a writ of habeas corpus. *Id.*

In *Patton v. State,* 810 N.E.2d 690 (Ind. 2004), our Supreme Court considered the intent issue in the context of a charge of attempted murder. Patton, intoxicated and armed with a sawed-off shotgun, came upon a parked car in which Michael Pack was in the driver's seat and Deitra Maxey was in the passenger seat. Patton fired a shot into the driver's side window that seriously injured Maxey. Patton then fired a second shot that killed Pack. Patton pleaded guilty to the murder of Pack and the attempted murder of Maxey, among other crimes; however, he later filed a petition for post-conviction relief alleging, *inter alia,* that his guilty plea to attempted murder was not knowing, voluntary, and intelligent. The post-conviction court denied his petition after making two findings: (1) the evidence indicates that neither the court nor Patton's attorney specifically advised him of the element of specific intent; and (2) there is adequate evidence from the record of the guilty plea proceeding to infer that Patton was aware of the elements. *Id.* at 697-98.

On appeal, our Supreme Court addressed the issue of whether Patton had been given "real notice of the true nature of [the attempted murder] charge against him" prior to entering a plea of guilty. *Id.* at 699. Citing to the *Henderson* Court's analysis, the *Patton* court set forth the factors that a court must consider when determining whether the accused received real notice of the crime that he is being asked to admit. *Id.* at 693. First, the court must consider whether intent is a specific element of the offense for which notice is required. *Id.* Second, if the intent is a specific element of the crime, the court must then consider whether the accused was given appropriate notice. *Id.* Third, if the accused was

7

not given appropriate notice, the court must then determine whether the lack of notice constituted harmless error. *Id*. at 694. Intent is a specific element of attempted murder. Looking to the proceedings before the post-conviction court, our Supreme Court agreed with the post-conviction court's first finding that Patton was not advised of this element by either the trial court or by his trial counsel. *Id.* at 697-98. The *Patton* Court, however, disagreed that, from the evidence, an inference could be made that Patton understood that his attempted murder conviction hinged on proof that he specifically intended to kill Maxey. *Id*. at 698. In reaching this conclusion, the Supreme Court highlighted that Patton did not shoot at Maxey directly, but instead shot through the driver-side window and hit Maxey who was sitting in the passenger seat. Additionally, the Supreme Court stated that it was unable to find "anything in the record indicating that Patton ever acknowledged shooting at Maxey or even knowing that Maxey was in the car." *Id*. at 699.

Here, the post-conviction court, distinguishing *Henderson* and *Patton*, found that Cox was fully advised of, and was aware of, the nature of the charges to which he was pleading guilty; therefore, the post-conviction court concluded that Cox's plea of guilty was knowing, intelligent, and voluntary. The post-conviction court reasoned as follows:

> Because the instant case centers on two convictions of attempted murder pursuant to a guilty plea, *Henderson's* first statement declaring specific intent a critical element of attempted murder necessarily applies. The Court will then examine the implications of the second and third statements.
>
> *Henderson* explains, and *Patton* confirms, sufficient notice is provided to defendants when the following appear in the record: (1) a complete enumeration of the elements of the offense, or (2) an explanation of the charges by a judge or (3) a representation by defense counsel that they explained the nature or substance of the charges. *Patton,* 810 N.E.2d at 697 (citing *Henderson,* 426 U.S. at 647).

8

As to the three foregoing *Patton* principles, this Court finds that in this case (1) the information filed with the charges against the petitioner does not adequately enumerate the specific intent element of attempted murder, (2) no explanation of specific intent as it pertains to attempted murder was explained by the [trial] court, and (3) the record does not contain an explicit representation by defense counsel that the nature and substance of specific intent was explained to Mr. Cox.

Continuing to cite *Henderson, Patton* further explains that even without any of the above mentioned appearing in the record, the trial court "may . . . presume in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Patton,* 810 N.E.2d at 693 and 697 (other citations omitted).

The presumption in *Patton* was overcome because the trial court made a specific finding of fact that "the evidence indicates that neither the court nor Patton's attorney specifically advised Patton of the element of specific intent." *Id.* at 697. This finding was without conflict in *Patton*, in fact, Patton's post-conviction counsel asked Patton's trial counsel, "So would it be fair to say that you would not have advised [Patton] that in order for him to be guilty of the attempted murder . . . that he had to have specifically intended to kill her?" The trial counsel responded, "I'm sure I didn't." *Id.* at 698 (citation to the trial record omitted).

As the Supreme Court pointed out, these cases are unique because the trial judge found as fact that the element of intent was not explained to respondent." *Henderson*, 426 U.S. at 647. Like the *Patton* trial court, the *Henderson* trial court also heard testimony from "the [] lawyers who had represented him." *Id.* at 639.

Unlike both *Patton* and *Henderson*, Mr. Cox has presented nothing to disturb the *Patton-Henderson* presumption except his own testimony at the PCR hearing.

In testing the credibility of Mr. Cox's PCR testimony, the Court finds that eleven years, ten months, and twelve days separate his PCR testimony at the hearing held on August 9, 2012 and September 28, 2000 when the charges were filed. However, when Mr. Cox testified at his change of plea hearing on November 30, 2000, only two months and two days had passed.

On November 30, 2000, Mr. Cox was asked by the Court if he understood the charges against him. At that time, much closer to the crimes, Mr. Cox

9

was convicted of, he said yes. He was also asked if he discussed the terms of his plea agreement with his attorney to his satisfaction and told the court he had. He also informed the [C]ourt that he was fully satisfied with his counsel's representation.

Also on November 30, 2000, Petitioner recalled that "he intended to shoot the girl and the friend, [Crouch]," that he "was angry when he did it," and that "he knew what [he] was doing when [he] shot at them." These statements again – much closer in time to the crime, contrast sharply with Mr. Cox's memory of events nearly twelve years later. In the PCR hearing, Mr. Cox claims he only remembers shooting [Crouch] and that he fired the gun once despite being charged with four separate felony counts involving firing a gun. He claimed no recollection of shooting "the girl" who was sitting on a bed and yet he plainly admitted that he did so at his change of plea hearing. He also could not recall at his PCR hearing how many people were shot or what he intended almost twelve years previously.

The conflict between Mr. Cox's two testimonies and passage of time undermines the credibility of the latter testimony. This Court finds that Mr. Cox's PCR hearing statement that he did not know that the State was required to prove that he specifically intended to kill his victims is not sufficient to conclude that his attorney failed to explain the charges against him, particularly in the absence of his attorney's testimony.

Mr. Cox was represented by an attorney. Therefore, the Court is entitled to and does find that Mr. Cox has not overcome the presumption that counsel explained the nature and substance of the charges against him.

*Appellant's App.* at 9-10. We cannot say that the evidence presented during the post-conviction proceedings, as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court.

## II. Factual Basis

Cox argues that the trial court failed to establish a factual basis for the attempted murder charges because Cox did not admit that he intended to kill Crouch and Coonce. Cox has the burden of showing that the factual basis is insufficient and that he was prejudiced by the error. *State v. Eiland,* 723 N.E.2d 863, 864 (Ind. 2000). Cox claims that

10

the post-conviction court erred by finding that he was not entitled to relief on this basis. To obtain relief, however, Cox, as the petitioner appealing from a negative judgment, has the burden of showing this court "that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the [post-conviction] court." *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind. 1995).

An Indiana court cannot accept a guilty plea unless there is an adequate factual basis for the plea. Ind. Code § 35-35-1-3(b). "The purpose of the factual basis requirement is to ensure that a person who pleads guilty is truly guilty." *State v. Cooper*, 935 N.E.2d 146, 150 (Ind. 2010) (citing *Butler v. State,* 658 N.E.2d 72, 76 (Ind.1995)). "As the ABA standards put it, the court should satisfy itself that 'the defendant could be convicted if he or she elected to stand trial.'" *Id*. (quoting *ABA Standards for Criminal Justice Pleas of Guilty* 65 (3d ed. 1999)). "'[A] factual basis exists when there is evidence about the elements of the crime from which a court could conclude that the defendant is guilty.'" *Id*. (quoting *Butler,* 658 N.E.2d at 77). The facts need not prove guilt beyond a reasonable doubt. *Id.* "The original trial court's determination that the factual basis was adequate is clothed with the presumption of correctness." *Id*. "We will only set aside the trial court's acceptance of a guilty plea for an abuse of discretion." *Id.*

During his change of plea hearing, Cox stated that he was pleading guilty of his own free will, and that he understood that by pleading guilty he was giving up certain constitutional rights. *Pet'r's Ex*. A at 10. He stated that he was smoking crack in the bedroom of an apartment where at least three other adults were present—Osmer, Coonce, and Crouch. *Id*. at 15-18. Cox and Osmer began arguing about the drugs, and the argument

11

escalated. Cox admitted that he shot Coonce and Crouch. *Id*. at 18. Although claiming that he shot Coonce and Crouch because they were "trying to do something to [him]," Cox also admitted that Coonce was merely "sitting up in bed," and Crouch "was over on the floor on the other end of the bed." *Id*. at 17-18. Cox admitted that he knew shooting someone could kill them and that he intended to shoot both Coonce and Crouch. *Id*. at 19-20.

Cox's post-conviction claim was properly denied because a sufficient factual basis existed to demonstrate that he acted with the specific intent to kill as an element for the attempted murders of Coonce and Crouch. A conviction for attempted murder requires proof of specific intent to kill. *Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind. 2000). Our Supreme Court has recognized that the "intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury." *Id.* at 1245; *see also Reese v. State*, 939 N.E.2d 695, 701 (Ind. Ct. App. 2011) (quoting *Bethel*, 730 N.E.2d at 1246, to support a finding of no error, fundamental or otherwise, where instruction is given "permitting the jury to infer intent to commit murder from the use of a deadly weapon in a manner likely to cause death or great bodily injury"), *trans. denied.* Our Supreme Court has also found that discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill. *Id*. *See, e.g., Fry v. State*, 885 N.E.2d 742, 750 (Ind. Ct. App. 2008) (sufficient evidence where victim watched defendant come outside, raise his weapon, aim at victim and begin shooting), *trans. denied*; *Shelton v. State,* 602 N.E.2d 1017, 1021 (Ind. 1992) (sufficient evidence where defendant pointed handgun at victim and shot him twice from distances of twelve and thirty feet).

Here, no reason existed for the shooting of Coonce and Crouch at close range; neither victim posed a threat where Coonce, who was pregnant, was merely sitting on the bed, and Crouch was on the floor on the other side of the bed. *Pet'r's Ex*. A at 16-20. The intent to commit murder may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm; therefore, the post-conviction court did not abuse its discretion in finding a sufficient factual basis existed to accept Cox's plea to two counts of attempted murder.

The record supports the post-conviction court's conclusion that Cox's plea was knowing, intelligent, and voluntary, and that a sufficient factual basis existed to accept Cox's plea to two counts of attempted murder. The judgment of the post-conviction court is therefore affirmed.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.