


FILED
Nov 05 2025, 8:51 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Taylor Building Corporation of America,

*Appellant-Defendant*

v.

Brett Milton, et al.,

*Appellees-Plaintiffs*

---

November 5, 2025

Court of Appeals Case No.
25A-PL-1290

Appeal from the Carroll Circuit Court

The Honorable Shane M. Evans, Judge

Trial Court Cause No.
08C01-2501-PL-1

---

**Opinion by Judge DeBoer**
Judges Bradford and Weissmann concur.

**DeBoer, Judge.**

## Case Summary

A construction agreement (the Agreement) between Brett and Amanda Milton (collectively, the Miltons) and Taylor Building Corporation of America (Taylor) contained a provision requiring the parties to resolve any dispute relating to the contract or the construction through mediation and, if necessary, arbitration administered by the American Arbitration Association (the AAA). After the Miltons sued Taylor for alleged defects with the construction, Taylor filed a motion to compel mediation and arbitration. The trial court denied that motion, and Taylor now appeals. We reverse and remand with instructions for the court to grant the motion.

## Facts and Procedural History

Under the Agreement, executed by the parties in March 2021,[1] Taylor agreed to construct a home for the Miltons in Monticello. The Agreement contained the following mediation and arbitration provisions:

> 17. (a) Mediation – [] [I]n the event of any dispute between [the parties] as to the quality of construction, quality of materials, any aspect of construction, contract disputes, similar disputes as to the construction, or any provision of this [A]greement, or any other dispute arising between the parties, the parties shall

---

[1] We note that while Amanda Milton did not sign the Agreement, the Miltons alleged in their complaint that the Agreement was between the two of them and Taylor, and Taylor did not dispute that allegation in its responsive pleading or in this appeal.

> endeavor to settle the dispute in an amicable manner by mediation administered by the [AAA] under its Construction Industry Mediation Rules. . . .
>
> (b) <u>Arbitration</u> – In the event the issues cannot be resolved by mediation, then any claims or disputes arising out of this [] Agreement or the alleged breach thereunder shall be settled by **mandatory** and **binding** arbitration in accordance with the Construction Industry Arbitration Rules of the [AAA] unless both parties mutually agree otherwise.

Appellant's Appendix Vol. 2 at 17 (emphasis in original). The parties later executed a no-lien contract providing that "no lien shall attach to [the Miltons' property] as a result of" Taylor's work and amending the effective date of the Agreement to be the date of the no-lien contract. *Id.* at 153. Beside those changes, the no-lien contract otherwise incorporated "all of the same terms, conditions, and provisions of the" Agreement. *Id.*

[3] In August 2023, the Miltons sent a letter to Taylor stating that "[a]s [it] near[ed] completion of the home[,] [they] would like to notify [it] in writing of some . . . problems with the house[,]" and they documented a litany of alleged construction defects. *Id.* at 120. According to the Miltons, Taylor never responded to that letter.

[4] The Miltons then hired an attorney, who sent a second letter to Taylor in September 2023 stating:

> It was intended by my client[s] that [the August letter] should have been considered the notice to you of issues to be addressed

and . . . giving you an opportunity cure the defects that were outlined in that letter. . . . There has yet to be an appropriate response in accordance with Indiana law. . . .

My client[s] expect[] an appropriate response in order to determine [their] next steps in dealing with a construction project that has already taken over twenty-six [] months and is not yet complete.

*Id.* at 124. The Miltons contend that in response to this letter, Taylor "threatened to stop construction[,]" demanded additional payment from them, and did not "cooperate appropriately" to cure the supposed defects. *Id.* at 112.

[5] In January 2025, the Miltons filed a complaint[2] alleging that despite their demands "to cure [] inferior and defective work[,] . . . Taylor ha[d] still not completed the repairs to the[ir] satisfaction[.]" *Id.* at 9. The causes of action asserted in the complaint included breach of contract, negligence, breach of implied warranty of habitability, nuisance, and fraudulent misrepresentation.

[6] Taylor filed a motion seeking, in part, to "[c]ompel[] [] mediation and/or arbitration in accordance with the Agreement and applicable AAA Rules[.]" *Id.* at 102. In response to that motion, the Miltons argued that, in their view, mediation would be "futile[,]" "the plain language of the Agreement does not

---

[2] It is not clear from the record before us what happened in the interim between Taylor's receipt of the demand letters and the filing of the complaint.

require arbitration[,]" and, even if it did, Taylor had waived its right to enforce the arbitration provision. *Id.* at 111.

[7] On April 28, 2025, the trial court held a hearing on several pending motions, including the motion to compel mediation and arbitration. Later that same day, the court issued a one-page order denying all pending motions, including the motion to compel. Taylor filed a motion asking the court to reconsider its decision, which was deemed denied pursuant to Indiana Trial Rule 53.4(B) because the court did not rule on it within five days. Taylor now appeals.[3]

## Discussion and Decision

[8] We review a trial court's denial of a motion to reconsider its prior ruling for an abuse of discretion. *Mitchell v. 10th and The Bypass, LLC*, 3 N.E.3d 967, 970 (Ind. 2014). "An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it[,]" or where the court has misinterpreted the law. *Id.* (quoting *Ind. Univ. Med. Ctr., Riley Hosp. for Child. v. Logan*, 728 N.E.2d 855, 859 (2000)). Whether to compel arbitration implicates issues of contract interpretation and thus is a question of

---

[3] Indiana Code section 34-57-2-19(a)(1) provides that "[a]n appeal may be taken from[] [] an order denying an application to compel arbitration[.]" *See also* Ind. Appellate Rule 14(D) (interlocutory appeals other than those set forth in Appellate Rule 14(A)-(C) "may be taken [] as provided by statute").

law that we review de novo. *Decker v. Star Fin. Grp., Inc.*, 204 N.E.3d 918, 921 (Ind. 2023).[4]

[9] We begin by recognizing that "Indiana has a strong policy favoring arbitration agreements." *Id.* at 920. This policy is reflected in the Indiana Uniform Arbitration Act, Indiana Code chapter 34-57-2, which provides that "[a] written agreement to submit to arbitration is valid, and enforceable, . . . except upon such grounds as exist at law or in equity for the revocation of any contract." Ind. Code § 34-57-2-1(a). Additionally, "[o]n application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court *shall* order the parties to proceed with arbitration." I.C. § 34-57-2-3(a) (emphasis added); *see also Koors v. Steffen*, 916 N.E.2d 212, 215 (Ind. Ct. App. 2009) ("Once the court is satisfied that the parties contracted to submit their disputes to arbitration, it is required by statute to compel arbitration."), *reh'g denied*.

---

[4] The Miltons contend that we should apply the negative judgment standard of review. Appellees' Brief at 9. Under that standard, the party claiming error on appeal following the entry of a judgment against them on an issue for which they had the burden of proof must show that "the evidence as a whole . . . leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 601 (Ind. 2019) (quoting *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind. 1995), *reh'g denied*, *abrogated on other grounds by Woods v. State*, 701 N.E.2d 1208 (Ind. 1998), *reh'g denied*, *cert. denied*) (internal quotation marks omitted). But we agree with Taylor that the "negative judgment . . . standard[] [is] wholly inapplicable here" because "[n]o evidentiary trial occurred, and [thus] no negative . . . judgment was entered." Appellant's Reply Br. at 7-8 (internal quotation marks omitted). In any event, even if we were to apply the negative judgment standard, we would still review questions of law de novo—including whether the parties' Agreement requires arbitration. *See In re Est. of Holt*, 870 N.E.2d 511, 514 (Ind. Ct. App. 2007) (under the negative judgment standard, appellate courts "evaluate questions of law de novo"), *reh'g denied*, *trans. denied*.

To successfully compel arbitration, the moving party must prove two elements. First, they "must demonstrate the existence of an enforceable agreement to arbitrate the dispute." *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005), *trans. denied*. Second, they "must prove that the disputed matter is the type of claim that the parties agreed to arbitrate." *Id.* Here, there is no dispute that the parties' Agreement contains an arbitration provision. Indeed, the Miltons' complaint alleges that "the Agreement provides for arbitration, and [they] are amenable to arbitration [of] issues that are subject to arbitration." Appellant's App. Vol. 2 at 9. Thus, we focus our analysis on whether the Miltons agreed to arbitrate the specific claims asserted in their complaint.

## 1. Applicability of the Mediation and Arbitration Provisions

Taylor contends that the trial court's denial of their motion to compel mediation and arbitration was erroneous in light of "the broad, unambiguous[,] and mandatory AAA mediation and arbitration provisions in the parties' [] Agreement." Appellant's Brief at 12. We agree.

When interpreting an arbitration provision, we apply general contract interpretation principles. *Decker*, 204 N.E.3d at 920. "The goal of contract interpretation is to ascertain and give effect to the parties' intent as reasonably manifested by the language of the agreement." *Id.* (quoting *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008)). As with all contracts, clear and unambiguous language in an arbitration provision "must be

given its plain and ordinary meaning." *Id.* at 920-21 (quoting *Reuille*, 888 N.E.2d at 771).

[13] In opposing the motion to compel mediation and arbitration, the Miltons argued that the arbitration provision had never "even come into play" because the requirement to arbitrate was "contingent on mediation failing[.]" Appellant's App. Vol. 2 at 112. They highlighted that the arbitration provision provided that the parties were only required to arbitrate "[i]n the event the issues [could not] be resolved by mediation[.]" *Id.* at 28. And, according to the Miltons, the mediation provision itself was "unenforceable" because it merely provided that the parties should "endeavor" to mediate. *Id.* at 28, 112. That interpretation is inconsistent with the plain language of the Agreement.

[14] We note that our Supreme Court has commanded that "in construing arbitration agreements, 'every doubt is to be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used.'" *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 706 (Ind. 2012) (quoting *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001)), *reh'g denied*, *cert. denied*. Here, the parties' agreement expressly provided that the parties "*shall* endeavor to settle the[ir] dispute in an amicable manner by mediation administered by the" AAA. Appellant's App. Vol. 2 at 28 (emphasis added). The Miltons' interpretation of the word "endeavor" as making participation in mediation optional is inconsistent with the Agreement's language. Instead, the use of the phrase "endeavor to settle the dispute" is more reasonably

understood as a reflection of the parties' agreement that they could not be forced to settle their claims. Nonetheless, we construe the phrase "shall endeavor" to mean what it says; though are not *required* to settle their claims, the parties must *try* to do so by participating in mediation with the AAA.

[15] Nor are we persuaded by the Miltons' argument that given Taylor's supposed unwillingness to participate in informal settlement discussions, "to require [them] to have complied with [the mediation provision] perfectly would require them to engage in [an] act of futility." *Id.* at 112. We note that even if this case is unlikely to be settled at mediation, the Agreement is clear that "[i]n the event the issues cannot be resolved by mediation, then any claims or disputes . . . shall be settled by **mandatory** and **binding** arbitration[.]" *Id.* at 28 (emphasis in original). So, even if we take as true that the parties would be unable to amicably resolve this matter through mediation with the AAA, it does not follow that they are relieved of their obligation to submit their disputes to binding arbitration.

[16] The Miltons further contend that Taylor "did not meet its burden of proof to demonstrate . . . that the disputed matters were the types of claims that the parties had agreed to mediate or arbitrate." Appellees' Br. at 12-13. But the contractual language at issue is clear that the claims subject to the mediation and arbitration provisions include "any dispute" that arises between the parties relating to the Agreement, including but not limited to disputes "as to the quality of construction, quality of materials, any aspect of construction, contract

disputes, similar disputes as to the construction, or any provision of th[e] [A]greement[.]" Appellant's App. Vol. 2 at 17.

[17] The Miltons' complaint asserts claims for breach of contract, negligence, breach of implied warranty of habitability, nuisance, and fraudulent misrepresentation, all of which pertain to the Agreement and the alleged defects in the construction Taylor performed thereunder. These claims clearly fall within the scope of the "claim[s] the parties agreed to arbitrate." *Safety Nat'l Cas. Co.*, 829 N.E.2d at 1000. Accordingly, Taylor met its burden of proof to compel mediation and arbitration, and the trial court erred to the extent it concluded otherwise.[5] *See id.* (holding that if "the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration").

\* \* \*

[18] Having concluded that the Agreement requires mediation and, if necessary, arbitration of the Miltons' claims, we turn next to the Miltons' argument that Taylor waived arbitration.

## 2. Waiver

[19] The Miltons argue that even if the arbitration provision would otherwise apply here, Taylor "waived its right to compel arbitration[.]" Appellees' Br. at 14.

---

[5] Because the trial court did not include any rationale for its decision in the appealed order, it is not clear to us whether it denied the motion to compel because in its view the Agreement did not require mediation and arbitration, or whether it determined that Taylor had waived enforcement of the arbitration provision.

When parties have agreed to submit a dispute to arbitration, "the right to require such arbitration may nevertheless be waived." *Capitol Constr. Servs., Inc. v. Farah, LLC*, 946 N.E.2d 624, 628 (Ind. Ct. App. 2011). However, "[w]aiver of a contractual right, including the right to arbitrate, requires a showing of an intentional relinquishment of a known right." *Welty Bldg. Co., Ltd. v. Indy Fedreau Co.*, 985 N.E.2d 792, 798 (Ind. Ct. App. 2013). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver[.]" *Id.* at 799 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). We look to a variety of factors to determine if waiver has occurred, "including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." *Capitol Constr. Servs.*, 946 N.E.2d at 628.

[20] Here, the Miltons contend Taylor waived arbitration because by failing to respond to their letters notifying it of supposed construction defects, Taylor "made clear that it would not cooperate as required by Indiana law to deal with the disputes." Appellees' Br. at 14. Specifically, the Miltons contend that their letters constituted a "written notice of claim" pursuant to Indiana Code section 32-27-3-2(a), which provides that "at least sixty [] days before filing a construction defect action . . ., the claimant must serve written notice of claim on the construction professional." If the construction professional "does not

respond to the claimant's notice of claim within [twenty-one days of service], the claimant may bring an action . . . without further notice." I.C. § 32-27-3-3(a).

[21] According to the Miltons, these statutes gave them the right to file the complaint despite their agreement to arbitrate. But such a reading of the statutes cannot be squared with Indiana Code section 32-27-3-13, which provides, in no uncertain terms, that "[n]othing in this chapter shall be construed to hinder or otherwise affect the . . . contractual relationship between and among home owners and construction professionals during the process of construction or remodeling[.]" Thus, we agree with Taylor that the statutory provisions cited by the Miltons "do[] not provide a plaintiff with any basis for ignoring or violating a contractual . . . arbitration provision." Appellant's Reply Br. at 12.

[22] Nor do we see any indication that once the Miltons filed suit, Taylor acted inconsistent with the enforcement of the arbitration provision. The Miltons filed their complaint on January 9, 2025. According to Taylor, it learned of the suit on February 25 and two days later filed a motion requesting an enlargement of time to respond to the complaint. The trial court granted that request and gave Taylor until March 13 to do so. On March 13, Taylor timely filed its motion to compel mediation and arbitration in accordance with Indiana Code section 34-57-2-3(c), which provides that "[i]f an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications [to compel

arbitration], the application shall be made in that action or proceeding." We see no delay or acquiescence to litigation by Taylor that would support a finding that it waived arbitration. *See Safety Nat'l Cas. Co.*, 829 N.E.2d at 996-97 (finding waiver when, among other things, the plaintiff "delay[ed] [] seeking . . . to compel arbitration once litigation was filed and [] acquiesce[d] to its Plaintiff status[.]").

## Conclusion

[23] For these reasons, we conclude that the parties agreed to mediate and arbitrate the claims filed in this action, Taylor did not waive its right to enforce the mediation and arbitration provisions, and, consequently, the trial court erred in denying Taylor's motion to compel mediation and arbitration. We reverse and remand with instructions for the court to grant that motion and order the parties to participate in mediation and, if necessary, binding arbitration administered by the AAA.[6]

[24] Reversed and remanded.

Bradford, J., and Weissmann, J., concur.

---

[6] Taylor also appeals the trial court's denial of its motion to dismiss the Miltons' complaint for improper venue as an alternative remedy to compelling mediation and arbitration. Because we find that mediation and arbitration should have been compelled, we do not address the parties' arguments regarding venue.

ATTORNEYS FOR APPELLANT

Michael A. Dorelli
Grantland M. Clapacs
Zechariah L. Banks
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana


ATTORNEY FOR APPELLEES

John A. Kraft
Young Lind Endres & Kraft
New Albany, Indiana